### REMINGTON v. STATE.

(Supreme Court, Appellate Division, Third Department. December 7, 1906.)

1. USE AND OCCUPATION—OCCUPANCY BY STATE—COMPENSATION—IMPLIED AGREEMENT.

If an entry is made on land, and use made thereof by the state with the permission of the owner, there is an implied agreement to pay the fair value of the use and occupation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Use and Occupation, § 3.]

2. TRESPASS—OCCUPANCY OF REAL PROPERTY BY STATE—AUTHORITY TO TAKE.

If a stranger to the title to land gives permission to the state to enter and use the land, its entry and use will constitute a trespass, although done under the supposition that the one giving permission was the owner, unless they were done under legislative authority to take the lands for a public purpose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trespass, §§ 3, 49.]

3. EMINENT DOMAIN—STATUTES—RETROACTIVE EFFECT—POWER OF STATE.

In order to make a lawful taking by the state under eminent domain, the provision for making compensation must pre-exist the taking.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 198–203.]

4. STATES—CLAIMS AGAINST STATE—COURT OF CLAIMS—JURISDICTION—STATUTES.

Laws 1876, p. 477, c. 444, § 2, gave the board of audit jurisdiction "to hear all private claims and accounts against the state * * * and to allow such sums" as "should equitably be paid by the state. * * *" Laws 1883, p. 213, c. 205, § 7, gave the board of claims "jurisdiction to hear, audit, and determine all private claims against the state which shall

have accrued within two years prior to the time such claim is filed * * * and to allow thereon such sums as should be paid by the state," and section 12 (page 215) abolished the board of audit. By Laws 1897, p. 14, c. 36, the board of claims was thereafter known as the "Court of Claims." Code Civ. Proc. § 264, defining the jurisdiction of the Court of Claims, as amended by Laws 1905, p. 851, c. 370, gave such court all the jurisdiction if the board of claims, and also "to hear and determine" private claims against the state accruing within two years. *Held*, that the Court of Claims has jurisdiction over a claim for use and occupation by the state forest, fish, and game commission of lands and waters belonging to plaintiff, at least as to that part of the claim accruing within two years of filing the claim.

5. SAME.

Where the Court of Claims has jurisdiction of a claim for use and occupation of plaintiff's lands by the state, it is error to dismiss the claim for want of jurisdiction, although the occupancy was by individuals acting without authority; but after that fact is determined the claim may be dismissed on its merits.

6. EVIDENCE—PRESUMPTIONS—OFFICIAL ACTS AND PROCEEDINGS—STATE BOARD.

It is to be presumed that a board created by the Legislature performs the duty imposed on it by statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 105.]

Appeal from Court of Claims.

Claim filed in the Court of Claims by Harvey F. Remington against the state. From a judgment dismissing the claim, the claimant appeals. Reversed.

The claim was filed May 15, 1906, and is one based upon allegations that the state, through its forest, fish, and game commission, in the year 1898 entered upon certain lands and waters which then belonged to claimant's grantors in the town of Wheatland, Monroe county, and which were conveyed to the claimant December 27, 1905, and constructed buildings, dams, ponds, and weirs thereon for the purpose of the propagation of fish, and that the state has ever since used the same for such purpose; that such entry was not made for the purpose of appropriating said lands and waters by eminent domain, but with the intent to pay a just rental for the use thereof to the owners, and with the supposed consent of the owners; that the state has ever since paid rent for such use and occupation, not to the true owners, but by mistake to one Guthrie, who wrongfully supposes himself to be the owner thereof, and who wrongfully and mistakenly bargained with the state for such payments; that such occupation, use, and payments were made without the consent of the claimant, or of his assignors and grantors, who duly notified the state of their rights in the premises; that such lands and waters were worth the sum of $200 per year; and that claimant's grantors have assigned all their claims and rights to make a claim against the state on account of its use and occupation of said lands and waters prior to the time of said conveyance thereof to the claimant. Claim is made for eight years' use and occupation, at $200 per year. The claim was dismissed by the Court of Claims, on the ground that it had no jurisdiction to hear it, and from the judgment of dismissal this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHESTER, COCHRANE, and KELLOGG, JJ.

George P. Decker, for appellant.

Julius M. Mayer, Atty. Gen., and Willis H. Tennant, Deputy Atty. Gen., for the State.

CHESTER, J. If the entry and use were made by the state with the permission of the owner, there would be an implied agreement

on the part of the state to pay the fair value of the use and occupation. Collyer v. Collyer, 113 N. Y. 448, 21 N. E. 114; Coit v. Planer, 4 Abb. Pr. (N. S.) 140. A stranger to the title, however, could give no valid permission to such entry and use, and if, as is alleged, the state entered and used the lands and waters upon the mistaken supposition that it had the consent of the owner, when in fact it had no such consent, the acts would constitute a trespass, unless they were done under legislative authority, to appropriate the lands for a public purpose and to make just compensation therefor. No such authority existed here, for the entry was made before the passage of chapter 591, p. 1420, Laws 1904, authorizing the forest, fish, and game commissioner to enter upon and take possession of lands for public purposes, and giving jurisdiction to the Court of Claims to determine the amount of compensation to be made therefor in case the commissioner and the owner were unable to agree upon such amount. In order to make a lawful taking under the power of eminent domain, the provision for making compensation must pre-exist the taking (Litchfield v. Bond, 186 N. Y. 66–74, 78 N. E. 719), which was not the fact here. So the question is squarely presented whether the Court of Claims has jurisdiction of a claim for damages for a trespass by the state or by its authority. It was held in Lewis v. State, 96 N. Y. 71, 48 Am. Rep. 607, that the doctrine of respondeat superior was not applicable to the state, and that it was not liable for the negligence or misfeasance of its agents, except in those cases where by legislative enactment it has assumed such liability. That was a case where a convict confined in the Elmira Reformatory presented to the board of audit created by chapter 444, p. 477, Laws 1876, a claim for damages for injuries alleged to have been caused by the negligence of an overseer in the reformatory. The claim was transferred, pursuant to section 12, c. 205, p. 215, Laws 1883, to the board of claims, where it was dismissed, and such judgment was affirmed by the Court of Appeals; that court stating, in substance, after holding that the rule of respondeat superior did not apply, that no liability was imposed upon the state for such a claim either by chapter 444, p. 477, Laws 1876, creating the board of audit, or by chapter 205, p. 211, Laws 1883, establishing the board of claims. The statement in the opinion that no liability for such a claim was imposed by chapter 205, p. 211, Laws 1883, was obiter, for the reason that the claim arose and was filed in 1882, before the passage of that law, and therefore no question as to the liability of the state under that act was presented for determination. There were substantial reasons for holding that in 1882 the board of audit had no jurisdiction of a claim for negligence or one sounding in tort, as an audit and the function of an auditing board, as those terms are ordinarily understood, relate to matters of account or those arising under contract. But when we consider the difference in the character of the tribunals and in the jurisdiction vested in the board of audit at the time the Lewis Case was decided and that vested in the Court of Claims when the present case was filed, we are convinced that it is not an authority supporting the dismissal of this claim for want of jurisdiction. Jurisdiction, under section 2 of the act above referred to, creating the board of audit (chapter 444, p. 477, Laws 1876), was given to such board "to hear all private claims and accounts

against the state (except such as are now heard by the canal appraisers according to law) * * * to determine on the justice and amount thereof, and to allow such sums as it shall consider should equitably be paid by the state to the claimants." Under section 7 of the act referred to, establishing the board of claims (chapter 205, p. 213, Laws 1883), such board was given "jurisdiction to hear, audit and determine all private claims against the state which shall have accrued within two years prior to the time when such claim is filed, * * * and to allow thereon such sums as should be paid by the state." Under section 13 (page 215) of the act, the board of claims was also vested with "all the jurisdiction and power to hear and determine claims against the state now possessed by the canal appraisers." By section 12 of the act, the office of canal appraiser and the state board of audit were abolished. The canal appraisers had jurisdiction to hear and determine claims against the state sustained from the use and management of the canals, or resulting from the negligence of any officer having charge thereof, or resulting from any accident or other matter connected with the canals, but such jurisdiction did not extend to claims arising from damages resulting from the navigation of the canals. Laws 1870, p. 749, c. 321, § 1. By chapter 36, p. 14, Laws 1897, the above act establishing the board of claims was repealed, and the board of claims was continued, to be thereafter known as the Court of Claims, and the jurisdiction of such court was defined in section 264, added to the Code of Civil Procedure by that chapter. That section, as amended by chapter 370, p. 851, Laws 1905, prescribed the jurisdiction of the Court of Claims as it existed at the time the state entered upon the lands in question and at the time this claim was filed, and which, so far as material to the question here presented, is as follows:

"The Court of Claims possesses all the powers and jurisdiction of the board of claims. It also has jurisdiction to hear and determine a private claim against the state, which shall have accrued within two years. It may also hear and determine any claim on the part of the state against the claimant or against his assignor at the time of the assignment; and must render judgment for such sum as should be paid by or to the state."

The board of audit, it will be seen, was limited to allowing upon claims such sums as should "equitably be paid by the state," while the board of claims and its successor, the Court of Claims, were given power to allow such sums as "should be paid by the state," without regard to whether the sum was legal or equitable. By the section of the Code of Civil Procedure referred to, the court is not only given all the jurisdiction of the board of claims, but also jurisdiction to hear and determine a "private claim against the state" arising within the time stated, and without any restriction whatever in the language employed in the statute as to the character of the claim, except that it must be a private claim. The language is plain, and is broad enough to cover every private claim of whatever character, whether arising on contract or sounding in tort, provided only that it shall have accrued within two years. By the language employed it seems clear that the Legislature intended to extend and enlarge the jurisdiction of the Court of Claims over that held by the board of audit, as defined in the statutes from which we have quoted. If we are correct in this

view, jurisdiction has been given to it to hear and determine the claim presented by this claimant.

This court took the same view of the jurisdiction of that court as it then existed in Litchfield v. Bond, 105 App. Div. 229, 93 N. Y. Supp. 1016. While that case has been reversed in the Court of Appeals (186 N. Y. 66, 78 N. E. 719), the reversal was placed on other grounds, and without questioning the view we stated. So, too, the Legislature, since the filing of the claim in question, and apparently to take from the court the jurisdiction which we think it possessed at the time this claim was filed to hear a claim sounding in tort, at its last session amended such section 264 by limiting the jurisdiction of the Court of Claims to hear private claims to those "arising upon or out of a contract with the state or an appropriation of land by the state." Laws 1906, p. 1887, c. 692.

While the entry by the state upon the lands in question was alleged to have been made eight years ago, yet if such entry was a trespass, and the occupancy of the lands has been a continuing trespass by the state down to the time of filing the claim, some part thereof accrued within two years, and to that extent, at least, we think it was within the power of the Court of Claims to hear and determine. We think, therefore, the court was in error in dismissing the claim for want of jurisdiction.

It is not to be understood that, in holding that the Court of Claims has jurisdiction to hear and determine a claim for a trespass by the state, if it appears that the acts complained of were done without legislative authority, by individuals wrongly acting or assuming to act in its behalf, that we think the state in such a case could be held liable; but even then the Court of Claims should not dismiss the claim for want of jurisdiction, but on the merits. Here it is alleged that the acts complained of were done by the state. That may be true, for under section 6 of the game law (chapter 488, p. 984, Laws 1892) it was made the duty of the commissioners appointed under that act to "propagate and distribute food fish and to keep up the supply thereof in the various waters of the state and for this purpose it shall have the conduct and control of such hatching stations as are now owned or operated by the state and such as may be hereafter established." It was also made their duty, under section 7 of that act, to annually make a report to the Legislature of all their official operations, and it is to be presumed that they performed the duty so imposed upon them.

Judgment reversed, and a new trial granted, with costs. All concur, except PARKER, P. J., not voting.