THE PEOPLE OF THE STATE OF NEW YORK ex rel. THEODORE H. SWIFT et al., Appellants, *v.* ROBERT L. LUCE et al., Respondents.

Constitutional law — Board of Claims — the statute (L. 1911, ch. 856) abolishing the Court of Claims and re-establishing the Board of Claims not a violation of the State Constitution (Art. 6, § 11).

1. History, analysis and construction of statutes (L. 1883, ch. 205; L. 1897, ch. 36; L. 1906, ch. 692, and L. 1911, ch. 856) creating and relating to the quasi-judicial bodies established to hear, determine and audit private claims against the state.

2. Neither the Board of Claims created by chapter 205 of the Laws of 1883, nor the Court of Claims created by chapter 36 of the Laws of 1897, was a court or judicial body within the terms or the meaning of the judiciary article of the State Constitution, but only an auditing board or quasi-judicial body, and, hence, the statute (L. 1911, ch. 856) abolishing the Court of Claims, as established by and under the act of 1897, and re-establishing the Board of Claims to consist of three commissioners to be appointed by the governor, thereby shortening the terms of the so-called judges of such Court of Claims, is not a violation of the provision of the Constitution (Art. 6, § 11) that judicial officers can be removed only by the senate with the concurrence of two-thirds of its members upon the recommendation of the governor, and the legislature could abrogate their terms of office.

*People ex rel. Swift* v. *Luce,* 149 App. Div. ——, affirmed.

(Argued January 22, 1912; decided February 27, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department,

entered January 12, 1912, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Thomas Carmody*, Attorney-General (*Morgan J. O'Brien, Frank S. Black* and *L. Laflin Kellogg* of counsel), for appellants. The Constitution having expressly provided a method for the removal of judicial officers, no other can be resorted to. The legislature cannot do indirectly what it cannot do directly. (*People ex rel. Burby* v. *Howland*, 155 N. Y. 272; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *People ex rel. Hopkins* v. *Bd. Suprs.*, 52 N. Y. 556; *Matter of Henneberger*, 155 N. Y. 420; *People* v. *Raymond*, 37 N. Y. 428; *People* v. *Allen*, 42 N. Y. 378; *Matter of Jacobs*, 98 N. Y. 98.) The position of the defendants that chapter 856 of the Laws of 1911 does not remove the relators contrary to the Constitution cannot be defended upon the ground that the statute abolishes the Court of Claims, for it does not restore the Board of Claims statute which had been expressly repealed but merely changes the name from "Court of Claims" to "Board of Claims," leaving the organization, jurisdiction, practice and procedure and all the essential features relating to the court in effect. (*Remington* v. *State*, 116 App. Div. 522; *G. T. Co.* v. *I. C. Comm.*, 190 Fed. Rep. 943; *Mosle* v. *Bidwell*, 65 C. C. A. 533; *People* v. *Ringe*, 197 N. Y. 143; *Worthington* v. *L. G. & A. Co.*, 164 N. Y. 81; *People ex rel. Sinkler* v. *Terry*, 108 N. Y. 1; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *People* v. *Raymond*, 37 N. Y. 428; *Matter of Henneberger*, 155 N. Y. 421.) The relators were "judicial officers" as that term is employed in section 11 of article 6 of the Constitution, such term including those judicial officers whose creation is impliedly as well as those whose creation is expressly authorized by the Constitution.

(*Settle* v. *Van Evrea*, 49 N. Y. 280; *Spencer* v. *State*, 187 N. Y. 484; *Ostrander* v. *State*, 192 N. Y. 415; *Lewis* v. *State*, 96 N. Y. 71; *People* v. *Draper*, 15 N. Y. 532; *Matter of Deuel*, 116 App. Div. 512; *Sill* v. *Village of Corning*, 15 N. Y. 297; *Newell* v. *People*, 7 N. Y. 9; *People* v. *N. Y. C. R. R. Co.*, 24 N. Y. 485; *People* v. *Gardner*, 45 N. Y. 812.) Not only has the Court of Claims not been abolished by chapter 856 of the Laws of 1911, but the court cannot legally be abolished by legislative act pending the construction of the barge canal improvements both because of the rights of litigants who had filed claims growing out of the statutes and the rights of the relators because of the provision in the barge canal statutes that "the Court of Claims shall have jurisdiction to determine the amount of compensation for lands, structures and waters so appropriated." (*Pelo* v. *Stevens*, 66 Misc. Rep. 35; *People ex rel. Comrs.* v. *Banks*, 67 N. Y. 568, 575; *People ex rel. Electric Lines Co.* v. *Squire*, 107 N. Y. 593, 601; *People ex rel. Everson* v. *Lorillard*, 139 N. Y. 285, 291; *De Hart* v. *Hatch*, 3 Hun, 375; *Alexander* v. *Bennett*, 60 N. Y. 204; *Mussen* v. *Ausable Granite Works*, 63 Hun, 367; *Getman* v. *Mayor, etc., of N. Y.*, 73 Hun, 236.) The sole purpose of chapter 856 of the Laws of 1911 being the removal of the relators and all other provisions being incidental thereto the act is void in its entirety. (*Rathbone* v. *Wirth*, 150 N. Y. 459; *Lawson* v. *Steele*, 119 N. Y. 226.) The legislature had the power to create the Court of Claims under its general power of legislation, there being no restriction, express or implied, upon it in this respect, and chapter 36 of the Laws of 1897 was, therefore, valid. (*Newell* v. *People*, 7 N. Y. 8; *Bank of Chenango* v. *Brown*, 26 N. Y. 467; *People ex rel. McLean* v. *Flagg*, 46 N. Y. 401; *Koch* v. *Mayor, etc.*, 152 N. Y. 72; *People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431; *Sill* v. *Village of Corning*, 15 N. Y. 297; *People ex rel. Townsend* v. *Porter*, 90 N. Y. 68; *People ex rel. Sinkler*

v. *Terry*, 108 N. Y. 1; *Stone* v. *State*, 138 N. Y. 124; *People* v. *A. R. R. Co.*, 160 N. Y. 225.) The creation of the Court of Claims does not necessarily rest upon the reserve power of the legislature because section 19 of article 3 of the Constitution forbidding the legislature to audit and allow private claims against the state, but permitting appropriations to pay such claims when audited and allowed according to law, made it the duty of the legislature to create some tribunal to pass upon such claims as were not audited and allowed by other state officers and gave it the power to create the Court of Claims, and chapter 36 of the Laws of 1897, therefore, rests upon express as well as implied power of the legislature. (*Quayle* v. *State*, 192 N. Y. 47; *Spencer* v. *State*, 187 N. Y. 484; *Cole* v. *State*, 102 N. Y. 52; *O'Hara* v. *State*, 112 N. Y. 146; *Ostrander* v. *State*, 192 N. Y. 415; *Wheeler* v. *State*, 190 N. Y. 406; *Curtis* v. *Barton*, 139 N. Y. 505; *Matter of Quinn*, 152 N. Y. 89; *Remington* v. *People*, 116 App. Div. 522; *Nussbaum* v. *State*, 119 App. Div. 755; 190 N. Y. 542.) Having the power to create the Court of Claims and make it a court of record the legislature also had the power to extend the terms of the relators and to enact chapter 692 of the Laws of 1906, and all of the statutes relating to the court prior to the enactment of chapter 856 of the Laws of 1911 are, therefore, valid. (*Wheeler* v. *State*, 190 N. Y. 406; *Settle* v. *Van Evera*, 49 N. Y. 280; *Geraty* v. *Reid*, 78 N. Y. 64; *People ex rel. Fowler* v. *Bull*, 46 N. Y. 57; *People ex rel. Williamson* v. *McKinney*, 52 N. Y. 374; *People ex rel. Le Roy* v. *Foley*, 148 N. Y. 677; *People ex rel. Lovett* v. *Randall*, 151 N. Y. 497; *Sun Publishing Assn.* v. *Mayor*, *etc.*, 8 App. Div. 230; 152 N. Y. 257; *Hequembourg* v. *City of Dunkirk*, 49 Hun, 550; *People ex rel. McCune* v. *Police Board*, 19 N. Y. 188; *Matter of Woolsey*, 95 N. Y. 135.)

*D-Cady Herrick* and *Charles D. Donohue* for respondents. The legislature had no power to create a Court of

31

Claims as a court of record, with jurisdiction all over the state. (*Matter of Fraser* v. *Brown*, 203 N. Y. 136; *Matter of Hopper*, 203 N. Y. 144; *Matter of Albany Street*, 11 Wend. 149; *Rathbone* v. *Wirth*, 6 App. Div. 277; 150 N. Y. 459.) If the legislature has the power to create a court of general jurisdiction, whose authority shall extend all over the state, upon the same principle it would have the right to take a court already in existence, of limited jurisdiction, and give it general jurisdiction all over the state. (*Landers* v. *S. I. R. R. Co.*, 53 N. Y. 450; *Geraty* v. *Reid*, 78 N. Y. 64; *Curtin* v. *Barton*, 139 N. Y. 505; *Hoag* v. *Lamont*, 60 N. Y. 96; *Hutkoff* v. *Demarest*, 103 N. Y. 377.) The framers of the Constitution are presumed to have known the then existing laws, institutions, courts and tribunals of the state and to have relied upon them in carrying the Constitution into effect. (*Koch* v. *Mayor, etc.*, 152 N. Y. 78; *People ex rel. Jackson* v. *Potter*, 47 N. Y. 375; *People ex rel. Townsend* v. *Porter*, 90 N. Y. 68.) The Constitution has not been amended or a Court of Claims created by chapter 147 of the Laws of 1903 or chapter 391 of the Laws of 1909. (*Barto* v. *Himrod*, 8 N. Y. 484; *People* v. *L. I. R. R. Co.*, 134 N. Y. 508; *People ex rel. Devery* v. *Coler*, 173 N. Y. 113; *Stanton* v. *Board of Suprs.*, 191 N. Y. 432; *People* v. *Ahearn*, 196 N. Y. 250; *People's R. R. Co.* v. *Memphis R. R. Co.*, 77 U. S. 50.) The legislature is not prohibited by the Constitution, either expressly or by implication, from abolishing the Court of Claims and re-creating the Board of Claims. (*People* v. *Dunlap*, 66 N. Y. 162; *Matter of Allison* v. *Welde*, 172 N. Y. 421; *Koch* v. *Mayor, etc.*, 152 N. Y. 79.) The relators have not been removed from judicial offices within the meaning of section 11 of article 6 of the Constitution. Abolishing the court is not a removal from judicial office within the meaning of the Constitution. (*Nichols* v. *MacLean*, 101 N. Y. 526; *People ex rel. Harris* v. *Commissioners*, 149 N. Y. 26; *People ex rel. Smith* v.

*Hoffman*, 166 N. Y. 462; *People* v. *Mayor, etc.*, 25 Wend. 12; *People* v. *Colt*, 3 Hill, 432; *Geraty* v. *Reid*, 78 N. Y. 64; *People* v. *Terry*, 108 N. Y. 1; *Koch* v. *Mayor, etc.*, 152 N. Y. 81.) The court will not inquire into the motives of legislators, in passing a statute, to determine its legality. (*People* v. *Draper*, 15 N. Y. 532; *Matter of N. Y. E. R. R. Co.*, 70 N. Y. 351; *People* v. *Albertson*, 55 N. Y. 50; *Killenger* v. *B. T. Co*, 160 N. Y. 377; *People ex rel. Mitchell* v. *Sturgis*, 156 N. Y. 580.) The provisions of chapter 692 of the Laws of 1906, whereby the term of office of the relators was extended for the full period of ten years, was an appointment by the legislature, and is illegal, and the terms of office of the relators have expired. (*People ex rel. Fowler* v. *Bull*, 46 N. Y. 57; *People ex rel. Williamson* v. *McKinney*, 52 N. Y. 374; *People ex rel. Le Roy* v. *Foley*, 148 N. Y. 677; *People ex rel. Lovett* v. *Randall*, 151 N. Y. 497.)

CULLEN, Ch. J. This action is in the nature of quo warranto brought by the People to oust from office the defendants, who were appointed commissioners of the Board of Claims under chapter 856 of the Laws of 1911, and to reinstate the relators as judges of the so-called Court of Claims which the act referred to purported to abolish.

The only question involved is the constitutionality of this act of the legislature. The history of the disposition of private claims against the state is as follows: The state, being sovereign, is immune from suit except in the Supreme Court of the United States at the instance of another state under the provisions of the Federal Constitution. Claimants had, therefore, to rely on the sense of justice of the legislature. By chapter 321 of the Laws of 1870 jurisdiction was conferred on the canal appraisers to hear and determine certain classes of claims arising from the use and management of the canals; but the great mass of claims against the state were submitted to and passed on directly by the legislature, which provided for

their payment. By an amendment to the Constitution made in 1874, which is now reproduced in section 19 of article 3 of the present Constitution, it was enacted that the legislature "shall neither audit nor allow any private claim or account against the State, but may appropriate money to pay such claims as shall have been audited and allowed according to law." Thereupon it became necessary, unless the state was either to violate its obligations or was willing to surrender its immunity and subject itself to suits in the courts like other litigants, for the legislature to create some board or tribunal which could pass upon and audit claims against it. Hence, in 1876 (by ch. 444) it was enacted that the comptroller, secretary of state and state treasurer should constitute a state board of audit with power to hear all private claims and accounts against the state, except such as were then heard by the canal appraisers, to administer oaths and take testimony in relation thereto, to determine the justice and amounts thereof, and to allow such sums as should be equitable. The board was authorized to establish rules as to the forms and methods of procedure before it. In 1883 (by ch. 205) the canal appraisers and the state board of audit were abolished and the Board of Claims constituted, to consist of three commissioners to be appointed by the governor and to hold office for the term of six years. The board was given jurisdiction to hear, audit and determine all private claims against the state, and it was also enacted that it should have jurisdiction of all claims on the part of the state against any person making a claim against the state and should determine such claims or demands both on the part of the state and the claimant; and if it found that the demand of the state exceeded that of the claimant, it should award such excess in favor of the state against the claimant. It will thus be seen that the jurisdiction conferred on the Board of Claims was of the broadest character. It included every private claim against the state and author-

ized the determination of set-offs or counterclaims by the state against the claimant.

Chapter 36 of the Laws of 1897 enacted that the Board of Claims should be continued and thereafter known as the Court of Claims. The act provided for the procedure by and before it and assimilated the procedure to that in regular courts, but it did not add one iota to the jurisdiction formerly possessed by the Board of Claims. Indeed, it was impossible that the jurisdiction of the Board of Claims, so far as the subject-matter of private claims by or against the state, could be increased, for already it was universal. Jurisdiction to determine public claims against the state was not conferred upon the Board of Claims (*Bd. Suprs. of County of Cayuga* v. *State of N. Y.*, 153 N. Y. 279), nor was it ever conferred on the Court of Claims, except in some special case by act of the legislature. One must not be misled by the fact that special laws were passed referring cases to the Board of Claims. Such were not rendered necessary because of any limitation on the jurisdiction of that board, but because such claims were not legal ones, but rested solely on morals and equity, and, therefore, were not enforceable until recognized by the legislature. Examples of cases of this character are to be found in *Cole* v. *State of N. Y.* (102 N. Y. 48) and *O'Hara* v. *State of N. Y.* (112 id. 146). By chapter 692 of the Laws of 1906 the terms of the judges then in office were extended ten years from the date of the act, and it was provided that they should continue in office until their successors were appointed and qualified.

The statute of 1911 (Ch. 856), already mentioned, amended section 363 of the Code of Civil Procedure so that there was no longer any authority for a Court of Claims, but the Board of Claims was continued to be composed, instead of judges, of three commissioners. The judges of the Court of Claims, then serving as such, were to be known as commissioners. Their terms were

abrogated and their successors directed to be appointed by the governor within sixty days after the passage of the act. The appellants challenge the validity of this act of 1911, claiming that the Court of Claims was a court of law, and the judges thereof judicial officers who, under the provisions of section 11 of article 6 of the Constitution, could be removed only by the senate with the concurrence of two-thirds of its members on the recommendation of the governor. It is not denied that if they do not fall within this provision the legislature may shorten or abrogate their terms the same as those of other officers whose tenure is not prescribed by the Constitution. We are of the opinion that the section does not apply. It cannot be extended so as to include any but judges of courts of law. There are many quasi-judicial officers in the state as to whom there is no pretense that they fall within the constitutional provision. The canal appraisers were such, as were the members of the board of audit. So also are the public service commissions (*People ex rel. C. P., N. & E. R. R. R. Co.* v. *Willcox*, 194 N. Y. 383), the members of town boards of audit, supervisors acting as members of a board of audit of claims against a county, assessors and tax commissioners. The question is, therefore, whether the Court of Claims — so denominated by the legislature — was in reality a court within the constitutional provisions, or only an auditing board and a quasi-judicial body.

We think it was the latter. The legislature was without power to create a new court with statewide jurisdiction. In the leading case of *Sill* v. *Village of Corning* (15 N. Y. 297, 299), which arose under the Constitution of 1846 providing for a Supreme Court which "shall have general jurisdiction in law and equity," it was expressly declared that "The provision (of the Constitution) respecting the higher courts, whose jurisdiction pervades the whole state, is exclusive in its character, and * * * no other courts of the same jurisdiction can be added by the legislature." In 1869 the judiciary article of the

Constitution was amended. By that amendment the superior local courts of the cities of New York, Buffalo and Brooklyn were recognized and continued with the powers and jurisdiction they then had and such further criminal and civil jurisdiction as might be conferred on them by law. Despite this broad language, it was held that the legislature could not confer upon these courts jurisdiction throughout the state, as that would trench upon the powers and jurisdiction of the Supreme Court. (*Landers* v. *Staten Island R. R. Co.,* 53 N. Y. 450; *People ex rel. Ryan* v. *Green,* 58 id. 295.) It is even more plain under the Constitution of 1894 that the higher courts there enumerated are intended to be exclusive, because not only the city courts above mentioned, but the Courts of Oyer and Terminer, General Sessions and Circuit Courts were abolished, and it certainly was not contemplated that the legislature should be empowered to create any similar courts though with different names. As said by Judge VANN (*Koch* v. *Mayor, etc., of N. Y.,* 152 N. Y. 72, 78): "The theory was to simplify the judicial system by reducing the number of high courts and to embed those retained so thoroughly in the fundamental law that they could not be changed or abolished without amending the Constitution."

It is sought to withdraw the so-called Court of Claims from the general rule thus declared on the ground that the Supreme Court had not jurisdiction of claims against the state. That fact does not affect the principle involved. The Supreme Court had not jurisdiction solely because of the immunity of the defendant from suit, not because it did not have jurisdiction of such a cause of action. Of the constitutional provision that the Supreme Court shall have general jurisdiction in law and equity, it was said by Mr. Justice DANIELS in *de Hart* v. *Hatch* (3 Hun, 375, 380): "The terms used are so comprehensive, that they include all cases of every description in law and equity, from the most important and complicated

to the most simple and insignificant, and they imperatively and positively establish the court ·with that extended jurisdiction." In that case it was held that the statute which authorized the Supreme Court to remand to the Marine Court of the city of New York any case of assault and battery, slander and the like was unconstitutional, and that neither the action of the legislature, nor of the courts, nor of both combined, could deprive the suitor of his right to try his case in the Supreme Court. This case has been twice cited with approval by this court. (*People ex rel. Mayor, etc., of N. Y.* v. *Nichols*, 79 N. Y. 582; *State of N. Y.* v. *County of Kings*, 125 id. 312.) The same principle was decided in *Alexander* v. *Bennett* (60 N. Y. 204). If a claim is made litigable at all, that is to say, if made the subject of a suit or litigation in a court of law, then under the express provision of the Constitution the jurisdiction of the Supreme Court attaches at once. It is true that the prosecution of small claims in the Supreme Court may be made unprofitable by provisions as to allowance of costs, but if the suitor is willing to subject himself to that penalty, he can prosecute any and every claim in that court. Nor if it were conceded that a new cause of action has been created would that empower the legislature to withdraw the cause of action from the Supreme Court and constitute another court for its determination. Doubtless the legislature may create new causes of action, but when created the jurisdiction of the Supreme Court attaches. Since the Constitution of 1894 a right of action has been given to prevent the use of one's portrait for advertising purposes. When created, the right could be asserted and prosecuted in the Supreme Court. No further legislation was requisite. It would hardly be contended that if the legislature should abrogate the law now prevailing which renders the auditing boards of towns and counties the tribunals in which the determination of the greater portions of claims against those municipalities is now vested, and subject

such municipalities to suits in all cases the same as private corporations, that new courts could be constituted to try such suits. The principle of the case suggested and of the advertisement cases cannot be distinguished from the case at bar.

Moreover, it is to be observed that with the constitutional amendment forbidding the payment of private claims by the legislature, except "when audited or allowed according to law," there was at the same time reported by the commission and adopted by the people another amendment found in the present Constitution as section 6 of article 7, which provides: "Neither the Legislature, canal board, nor any person or persons acting in behalf of the State, shall audit, allow, or pay any claim which, as between citizens of the State, would be barred by lapse of time." While I have no doubt that the legislature might at any time pass a statute waiving the state's immunity, which would at once subject it to suits in the regular courts the same as other parties, it is plain from this enumeration of the persons who are forbidden to pay claims barred by the Statute of Limitations that the Constitution makers contemplated that legislative action would take the course of conferring the audit and allowance of claims, not on courts, but on auditing boards, for there is no mention in the provision either of court or judge. This is further made evident by the fact that in the constitutional convention of 1894 it was sought by some members to create a Court of Claims, but the suggestion failed to obtain the approval of the convention.

It is conceded in the brief of the learned counsel for the appellants that the Board of Claims was not a court. If so, and it was made a court by the statute of 1897 (Ch. 36), it was merely the legislative fiat changing the name of the body that effected this result, since, as already shown, the jurisdiction and powers of the Court of Claims were the same as those of the Board of Claims. Hence, if the Court of Claims, so named, was in reality a court,

the Board of Claims must have been equally so, and indeed it is difficult to see why the board of audit and canal appraisers were not also courts. Their jurisdiction was the same as that of the Board or Court of Claims, save in one respect. They were not given the power to decide counterclaims of the state against claimants. But this power was not conferred on the Board or Court of Claims because they were courts of law. It was simply because the legislature attached this condition to the auditing or allowance of claims against the state. It could not confer power on the Court or Board of Claims to adjudicate a claim made against any party who did not make a claim against the state. (*State of N. Y.* v. *County of Kings,* 125 N. Y. 312.) The legislature might, therefore, equally have imposed this condition on parties prosecuting claims before the board of audit or canal appraisers.

But if it were competent for the legislature of 1897, by a mere declaration to that effect, without changing in any respect the jurisdiction of the tribunal, to change the Board of Claims into a Court of Claims, it is difficult to see why the legislature of 1911 did not equally have the power to reverse the process and change the court into a board, for it is elementary that one legislature cannot bind its successors. Nor is it profitable to quibble as to the difference in phraseology used in the two acts, that of 1897 and that of 1911. The legislature is master of its own diction, and if the intent of the legislature is clear, it is the duty of courts to give effect to it no matter how incongruous or how inaccurate may be the language used to indicate that intent. The intent of the legislature is in each case perfectly plain — in 1897 to change the board into a court — in 1911 to change the court back into a board. With the motives that dictated the legislature in either case the courts are not concerned. Intent only is material. But the motives in the one case seem to have been about as praiseworthy as in the other; in the

first to make the tribunal a court and extend the terms of its members so as to put their tenure beyond the reach of their political opponents in case they should thereafter come into power; in the second, by the party then in power to regain the control and appointments to office which their adversaries had sought to place beyond their grasp. If, therefore, it should be assumed that under the constitutional provisions the legislature could at its election constitute either a court or an auditing board for the determination of claims against the state, it is plain that the legislature of 1911 had the same power to enact that such claims should be disposed of by a board as that of 1897 had to enact that they should be disposed of by a court. It has been expressly decided by this court, Judge VANN writing, that despite the constitutional provisions which lie at the foundation of the appellants' argument, the legislature can abolish a court and create a new court in place thereof, though the effect of the legislation is to remove judges from office. (*Koch* v. *Mayor, etc., of N. Y., supra.*) *A fortiori,* it must have the same power to abrogate a court and institute in lieu thereof a board.

Reliance is placed by the appellants on the opinion rendered by this court in *Quayle* v. *State of N. Y.* (192 N. Y. 47, 52), where it was said: " The creation of the Board of Audit, the Board of Claims and the present Court of Claims was rendered necessary by the constitutional amendment of 1874, which enacted that the legislature should neither audit nor allow any private claim or account against the state, but might appropriate money to pay such claims as should have been audited and allowed according to law." This, it is claimed, is a declaration by this court that the Court of Claims was a court. Not so. It was a mere matter of nomenclature, as appears not only by the sentence excerpted itself, but by subsequent discussion. The board of audit and Board of Claims were coupled with the Court of Claims as being tribunals of the same character. The legislature might create a court with the

powers and jurisdiction of a police court in some insig-nificant village and call it the high court of chancery of that village. The name bestowed on the court would not make it a court of chancery, and equally as long as the court was really a police court, conferring upon it this grandiose title would not in any degree render the act creating it unconstitutional. In other words, the inquiry is always as to the thing, not as to its name. (*People ex rel. Sinkler* v. *Terry,* 108 N. Y. 1, 10.)

In the opinion of one of my associates it is stated that "The Court of Claims was invested with a broader juris-diction of claims against the state than that possessed by the Board of Claims." I have already said that the jurisdiction conferred on the court was in no degree greater than that possessed by the board, and to show that my statement is accurate I quote the sections of the statutes of 1883 and 1897 defining the jurisdiction of the respective tribunals created by those acts:

## BOARD OF CLAIMS.

"Said board shall have jurisdiction to hear, audit and determine all private claims against the state which shall have accrued within two years prior to the time when such claim is filed and which shall not have been determined on the first day of June, eighteen hundred and eighty-three, nor be barred by any existing statute, and to allow thereon such sums as should be paid by the state. It shall also have jurisdiction of all claims, on the part of the state, against any person making a claim against the state, before said board, and shall determine such claim or demand both on the part of the state and the claimant; and if it finds that the demand of the state exceeds the demand of the claimant, it shall award such excess in favor of the state against the claimant." (L. 1883, ch. 205, sec. 7.)

## COURT OF CLAIMS.

"The court of claims possesses all the powers and juris-diction of the board of claims. It also has jurisdiction to

hear and determine a private claim against the state, which shall have accrued within two years before the claim is filed. It may also hear and determine any claim on the part of the state against the claimant, or against his assignor at the time of the assignment; and must render judgment for such sum as should be paid by or to the state. But the court has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination. Where jurisdiction to hear and determine a claim is conferred upon the court by a special law, the liability of the state is not thereby implied, but such a claim is subject to defense and counterclaim by the state in the same manner and to the same extent as if presented under a general law." (L. 1897, ch. 36, sec. 1, constituting section 264, Code of Civil Procedure.)

I have said that it would be profitless to discuss the phraseology of the two acts — that of 1897, declaring the Board of Claims a court, and that of 1911, declaring the court a board. Since, however, it is urged that the act of 1911 did not in terms repeal the statute making the board a court, the court is still in existence, it suffices to say that this argument is sufficiently answered by the quotation of the first sentence of the act of 1897, which shows that the criticism is equally applicable to that statute. It did not abolish the Board of Claims, but on the contrary the act begins: "*The board of claims is continued and shall hereafter be known as the court of claims.*" That it was not intended to create new officers, read the next sentence of the statute: "The court consists of the commissioners of claims now in office and their successors, (*i. e.*, successors of the commissioners) who shall hereafter be *known* and *designated* as judges of the court of claims." Where could there be a plainer declaration that the change was solely one of nomenclature? Assuming, however, that legislative fiat could change not only the name of the thing but the thing itself, and

turn an auditing board into a court, why had not the legislature of 1911 an equal right to reverse the process?

An appeal is made to maintain the constitutional safeguards giving the judiciary immunity from arbitrary removal by the legislature or the executive department. The principle is a vital one in our form of government and should be maintained in full integrity. I have already endeavored to show that the relators were not judges of a court of law, and if they were not such, I do not understand there is any claim that they fall within the constitutional provision. But as an appeal is made to the ethical side of the question, let us see if that consideration supports relators' claims. When the statute of 1911 was passed the official terms for which they were appointed had expired, and they held office solely by virtue of an act of the legislature which arbitrarily extended their terms, and not under their appointments by the governor. (*People ex rel. Fowler* v. *Bull*, 46 N. Y. 57.) They were at that time as much the beneficiaries of legislative interference as they now claim to be its victims. I have not discussed the validity of the act of 1906, as I did not deem it necessary in the view I took of the case. But if it is to be held that such legislation is valid, and that the legislature may create courts of record in addition to those authorized by the Constitution, there is no reason why the legislature may not give the judges of a new court life tenures. In the constitutional convention of 1867, the question whether the judges of the various courts of record created by it should be appointed by the governor or elected by the people was the subject of serious discussion, and the convention enacted (Art. 6, sec. 17) that it should be submitted to the vote of the electors of the state at the election of 1873 which mode should be adopted. The vote of the people was in favor of retaining the mode in use — choosing judges by election. The power has never at any time been conferred on the legislature to appoint

judges, nor has there ever been a suggestion in any constitutional convention to confer it. If such a power does exist, it is solely by virtue of the provisions of the Constitution (Art. 10, sec. 2) which prescribes that "All other officers, whose election or appointment is not provided for by this Constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct." Surely no one thought that this would give to the legislature the power to appoint judges of courts, nor can it do so, unless we can hold that the legislature may create courts of statewide jurisdiction, for the judges of the inferior courts provided for by the Constitution must necessarily be elected by the people or appointed by the local authorities. Therefore, the incumbency of the relators if they were judges was a violation of the spirit of the Constitution, if not, indeed, of its terms. If the act extending the terms of the relators was invalid, then the appointments of the defendants to their offices, whether they be called commissioners or judges, were entirely valid, because the offices of the relators had become vacant.

The judgment should be affirmed, with costs.


GRAY, J. (dissenting). The purpose of this action, brought by the attorney-general of the state, is to test the right of the defendants to the offices heretofore held by the relators, as judges of the Court of Claims, by obtaining the judgment of the court upon the question of the constitutionality of chapter 856 of the Laws of 1911. That act purported to amend sections 263, 266, 268, 279 and 280 of the Code of Civil Procedure, which relate to the Court of Claims. Sections 263 to 281 constitute title III of chapter III of the Code and were enacted in 1897. (Laws 1897, chap. 36.) The effect of their enactment was, apparently, to create a Court of Claims, with a somewhat enlarged jurisdiction, (Sec.

264), as the successor to what had been the Board of Claims, which had been created in 1883. (Laws 1883, chap. 205.) Section 263 provided for a Court of Claims, for the appointment of judges and for their tenure of office, and the other sections defined the jurisdiction of the court; authorized the establishment of rules of procedure and the appointment of officers; provided for the record, lien and execution of judgments; allowed appeals from judgments to the Appellate Division of the Supreme Court; fixed salaries and, generally, regulated the functions of the court upon the model of the existing higher law courts. The acts creating, and relating to, its predecessor, the Board of Claims, were expressly repealed by section 6 of the act of 1897 and the Court of Claims thereafter came into existence, with all the powers appertaining to the jurisdiction of a court established for the hearing and determination of claims against the state. It took its place, and continued, as one of the courts of record by the express provisions of section 2 of the Code of Civil Procedure and of section 2 of the Judiciary Law. Section 263 of the Code is amended by the act of 1911, now in question, so as to read that "The Board of Claims is continued and shall hereafter be so known and shall consist of three Commissioners who shall be appointed by the Governor, by and with the advice and consent of the Senate." The section, then, continues by providing for the succession of such commissioners to the then serving judges of the Court of Claims; for the tenure of their offices and for their successors; for the qualifications of appointees and for the compensation to be paid. It provided that, while the judges of the Court of Claims should constitute the new Board of Claims, until their successors should take office and for sixty days thereafter, for the determination of matters pending before them, "their offices shall be deemed vacant for the purpose of devolving all other powers and jurisdiction upon their successors." The amendment stated

that "All provisions of this article" (meaning the article, or title, of the Code upon the Court of Claims) "applicable to the Court of Claims, its jurisdiction and procedure, shall hereafter apply to said Board, prescribe its jurisdiction and govern its procedure, except that the determination of the Board upon a claim shall be and be known as a determination instead of a judgment, but it shall have the same force and effect and be subjected to the same procedure as provided in this article for a judgment." The changes in the other sections of the title of the Code consist, merely, in abolishing the office of marshal; in requiring the attendance of all sheriffs and in diminishing the salaries to be paid.

It appears, upon a reading of the amendment of the sections, that, while the nomenclature of the tribunal and of its judges is changed, the organization of the court, its jurisdiction and procedure remain as they were. It shows, clearly, that the act was intended to deprive, summarily, the then serving judges of the Court of Claims of the offices, to which they had been appointed, and to provide for the appointment of others in their places. It is far from clear, in language, or by inference, that it was intended to abolish the court, as a court. It is not denied by the appellants that it was competent for the legislature to abolish the court and if that was the effect of the act, then, the terms of office of its judicial, and other, officers were, necessarily and validly, cut off. The power that existed in the legislature to create the office was equally effectual to abolish it; but the officers could not be unseated by legislation while the court, as a court, was continued.

The question, then, is whether the Court of Claims was abolished, at all. If it was not abolished, how was it competent for the legislature to declare the offices of the appellants vacant, when all that had been done was to change the names of the tribunal and of its officers? Why were they not, as judicial officers, protected against

32

such arbitrary removal by the judiciary article of the Constitution of the state ? In my opinion, the purpose of the legislature was not to abolish the offices, but to give them to other appointees. It was a transparent device to evade the constitutional mandate upon the subject of the removal of judicial officers. While the courts should, and will, not inquire into the motives of the legislative body, they will, in the discharge of their duty as conservators of constitutional rights, scrutinize its enactments and, if the purpose shall appear to be an evasion of a constitutional mandate, condemn them. (*People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50; *Matter of Henneberger,* 155 id. 420, 430.) Changes in the appellation of its officers, unaccompanied by any change in the jurisdiction or functions of the court, make very evident a colorable scheme to legislate the appellants out of office without appearing to violate the Constitution.

The act of 1911 neither, in terms, abolishes the Court of Claims; nor repeals the act of 1897, which created it. There is nothing which suggests such a legislative intent; for all there is of it is to be found in the language that "the Board of Claims is continued and shall hereafter be so known," etc. All else in the act leaves the tribunal as it was, in organization, jurisdiction, powers and functions. The Board of Claims, which is sought to be "continued," was not in existence. There was none to continue. It, undoubtedly, was careless legislation to declare a court continued, which had ceased to exist; but the legislative intent that there should be a new court of record was clear from, and was effectuated by, the elaborate provisions made by the statute. Its predecessor in jurisdiction, the Board of Claims, was abolished by the repeal of the statutes under which it existed and acted and in its place arose by the force of the statute a judicial, organized tribunal, having the attributes, and exercising the functions, of a court technically of record. The difference between the legislation of 1897 and of

1911 is apparent, at a glance; forasmuch as the latter
effected none of those things, which in the former abol-
ished a tribunal of quasi-judicial powers and erected in
its place a court of law.    The Board of Claims had been
created in 1883, (Laws 1883, chap. 205), and by the act
creating it the state boards of audit and of canal
appraisers had been expressly abolished.    What jurisdic-
tion these bodies had exercised of claims against the state
was vested in the new tribunal and that jurisdiction was
somewhat enlarged.    There were lacking, however, vari-
ous features which characterize a court of law, not only
in the limitations upon its jurisdiction, but, also, in the
exercise of its functions and in the mode of enforcing its
determinations, or awards.    Therefore it was that, in
1897, a Court of Claims was created and the statutes
under which the Board of Claims had existed were
expressly repealed by section 6 of the statute.    A new
and important court was evolved and was established;
which was made a court of record and to which a title of
the Code of Civil Procedure was devoted.    It was deemed
to be invested with a broader jurisdiction of claims against
the state, than was possessed by the Board of Claims, (see
section 264 of Code), and it was distinguished from its
predecessors in the possession of the characteristic features
and powers of a court of law.    (*Spencer* v. *State of N. Y.,*
187 N. Y. 484; *Remington* v. *State of N. Y.,* 116 App.
Div. 522.)    Being such a court, its members were judicial
officers, exercising by virtue of their offices judicial
powers; the removal of whom from office was expressly
provided for in article VI of the State Constitution.    Sec-
tion 11 of that article reads: "Judges of the Court of
Appeals and Justices of the Supreme Court may be removed
by concurrent resolution of both houses of the Legislature,
if two-thirds of all the members elected to each house con-
cur therein.    *All other judicial officers,* except justices of
the peace and judges or justices of inferior courts not of
record, may be removed by the Senate, on the recom-

mendation of the Governor, if two-thirds of all the members elected to the Senate concur therein. But no officer shall be removed by virtue of this section except for cause," etc. The term "judicial officers" is of wide import and "includes judges and justices of all courts and all persons exercising judicial powers in virtue of their office." (*Settle* v. *Van Evrea*, 49 N. Y. 280, at p. 284.) Such a provision, in substance, protecting the judiciary against arbitrary removal by the legislative, or executive, department, was, with wise and admirable prescience, inserted by the makers of the Constitution of 1846 and adopted by the People. By this section of the judiciary article a procedure is prescribed for the removal from office of a judicial officer, which shall be for cause shown and after a hearing before a tribunal, whose character insures careful and just consideration of the cause alleged. It was foreseen that the judiciary department of the government would constitute a wholesome check upon any legislative invasion of rights secured by the Constitution and it was intended to safeguard the independence of judges in this way. It was essential that judicial officers should be protected against arbitrary removal for political purposes, or in submission to popular censure, too often founded in an ignorance of the reasons controlling the performance of the judicial duty. When charged with misconduct in office, their fitness to remain was to be determined by the tribunal provided for in the Constitution. Until the People withdraw this safeguard of an independent judiciary, the courts should firmly uphold it, in all its integrity; and interpose it according to the presumed and fair intent of the instrument. It must be presumed that its framers understood the force of the language used and, as well, the People, who adopted it as a part of the fundamental law of their government. In prescribing the mode of removal of "all other judicial officers, except justices of the peace and judges, or justices, of inferior courts, not of record," the

reference is to all exercising judicial powers by virtue of their office; who, not being judges of the Court of Appeals, or justices of the Supreme Court, are members of an existing constitutional court, or of one that might be legally created under the Constitution. I think it plain, from the language and from the context, that the reference is to courts of law and not to quasi-judicial tribunals.

The Court of Claims is not mentioned in the Constitution; but it does not, necessarily, follow that the legislature was without authority to create it. That body exercises all the powers of state sovereignty; except as the People, in granting those powers, through a constitution, have imposed restrictions. It possesses all the general powers of legislation and has jurisdiction of all subjects upon which its legislation is not prohibited. (*Sill* v. *Village of Corning,* 15 N. Y. 297; *Koch* v. *Mayor, etc., of N. Y.,* 152 id. 72.) In the language of Chief Judge DENIO, in *People ex rel. Wood* v. *Draper,* (15 N. Y. 532, at p. 543), "plenary power in the legislature for all purposes of civil government is the rule." It must be conceded that the legislative body is, impliedly, restricted by the judiciary article from erecting another court with the original and general jurisdiction of the Supreme Court, or with the appellate jurisdiction of the Court of Appeals; as, otherwise, the judicial system of the Constitution might be subverted. But, conceding this restraint, it would be lifted for the creation of another court of law, if a reason, or a necessity, for such should be apparent in the Constitution. The legislative body would be, impliedly, authorized, in the exercise of its discretion, to provide for such a court. A necessity for another tribunal did arise when, by the constitutional amendment of 1874, it was declared that "the Legislature shall neither audit nor allow any private claim or account against the State, but may appropriate money to pay such claims as shall have been audited and allowed according to law." (Art. III, section 19.) The

state could not be sued in its courts and the justice of providing for some mode of adjudging claims against it was felt and found expression in the amendment. The legislature, mindful of the constitutional mandate, subsequently, created a board of audit and, in 1883, superseded that tribunal by a Board of Claims. As it was said in *Quayle* v. *State of N. Y.*, (192 N. Y. 47, at p. 53), it was "intended to confer on the boards power to adjudicate those claims, which lay beyond the auditing power of the comptroller, and for the allowance of which the only method, previous to the constitutional amendment, had been direct action by the Legislature." The Board of Claims did not satisfy the demand for a court of law, in which claims against the state could be enforced. It was but a quasi-judicial tribunal, with attributes similar to those of an ordinary state board; whose awards had not the force of the judgments of a court. This led, in 1897, to the creation of the Court of Claims; which was invested with all the powers and attributes of a court having jurisdiction to hear and determine claims held against the state, or held by the state against the claimant. Its jurisdiction was regarded as increased over that possessed by the Board of Claims, (Code Civ. Proc. section 264; *Remington* v. *State of N. Y.*, 116 App. Div. 522), and there was nothing lacking to make it a court of law with general jurisdiction of a class of claims, to which the jurisdiction of the Supreme Court did not extend. Thus, the legislature had, progressively, reached the point, where permission was granted to sue the state upon private claims held against it and, thereby, had given the fullest effect to the constitutional provision for securing the allowance of claims "according to law." It is true that the legislature might have conferred jurisdiction upon the Supreme Court to hear and determine claims against the state; but that is no reason for holding that it was without power to create a court with that peculiar jurisdiction. The question is whether the legislature was forbidden to do so; for where no prohibition,

express, or necessarily implied, is found in the Constitution, the legislature, in exercising the powers of state sovereignty granted to it, can provide such agencies for the administration of the law as it shall judge suitable. (*Sill* v. *Village of Corning, supra,* at p. 300.)   In inquiring whether the act creating a Court of Claims was constitutional, it may be said, in the language of Judge VANN, in *Koch* v. *Mayor, etc., of N. Y.,* (152 N. Y. at p. 75), "it is for those who question its validity to show that it is forbidden." The legislature could not create other courts with like jurisdiction to that exercised by the Supreme Court; but, in establishing a court of law, which should have jurisdiction of claims against the state, it was acting in compliance with the Constitution. It provided that agency, which was most suitable, in its judgment, for procuring the allowance of a claim "according to law." In such a case, the absence of express authority constituted no restraint. The decision in *Koch* v. *Mayor, etc., of N. Y.,* (*supra*), has no particular application to this case; inasmuch as what was there being considered in Judge VANN's opinion was the constitutionality of an act of the legislature abolishing the office of police justice in the city and county of New York; whereby the terms of the incumbents of the office expired. The learned judge held that the abolition of the office carried with it, as a necessary incident, the termination of the official life of the justices in office. This doctrine is not, and cannot be, questioned; to the contrary, it is not inapplicable to the contention of these appellants, who claim that the act of 1911, in question, did not abolish the Court of Claims and, therefore, was invalid as affecting their tenure of office. Looking through the form of the act of 1911 to its substance, we find in it an amendment of sections of the title in the Code relating to the Court of Claims; whereby no other material change was effected than in the names of the court and of its judges, in the term of office and in the salaries. It re-enacts no provision of the

statute relating to the Board of Claims, which statute had been expressly repealed by the act of 1897; it repeals no provision of the statute relating to the Court of Claims, nor, in terms, abolishes that court; it makes no change in jurisdiction, procedure, or practice, and shall we say that the court, heretofore established under the name of the Court of Claims, has been abolished and the former Board of Claims restored by a change in nomenclature? (*People ex rel. Bolton* v. *Albertson, supra; Worthington* v. *London G. & A. Co.,* 164 N. Y. 81, at p. 87.)    I think not.    An intent is clear to preserve the court and, under a colorable change in its name, to vacate the offices of its judges, that they may be given to others, presumably, of the same political faith as that entertained by the majority of the legislators by whom the amendment was passed.    This will not do.    If, as I have endeavored to show, the Court of Claims was constitutionally created, then the mandate of section 11 of the judiciary article of our Constitution may not be evaded in so transparent a guise.    That article, in providing for the removal of "all other judicial officers," applied not only to the judicial officers named in, or authorized by, the Constitution, but, as well, to those of any court which the legislature might legally create.    The argument in support of the constitutionality of the act of 1911, in question, is predicated upon a want of power in the legislature to create the Court of Claims, as a court of law, having a broad jurisdiction of claims against the state; while the argument against its constitutionality is that implied power was vested in that body, in the exercise of its discretion, to create just such a court of law as the Court of Claims for the purpose of adjudicating upon claims against the state.    The latter argument commends itself to my judgment.

I have reached the conclusion that the act of 1911 is unconstitutional and, therefore, of no effect in attempting to vacate the offices of the relators.    Portions might

be valid legislation, if only changes in the name of the court, or in the appellation of its members, or in the number of its officers, or in the salaries, were intended; but I think the invalid parts so permeate the whole amendment as to make new legislation necessary for such changes.

For the reasons given, I advise that the judgment be reversed and that judgment be ordered in favor of the relators and against the defendants, adjudging chapter 856 of the Laws of 1911 to be unconstitutional and, therefore, invalid, and that the relators be restored to the possession and emoluments of their offices as judges of the Court of Claims.

HAIGHT, WILLARD BARTLETT and COLLIN, JJ., concur with CULLEN, Ch. J.; VANN and CHASE, JJ., concur with GRAY, J.; WERNER and HISCOCK, JJ., not sitting.

Judgment affirmed, with costs.