OLIVER A. QUAYLE, Appellant, v. THE STATE OF NEW YORK, Respondent.

1. STATE — CLAIM AGAINST FOR BREACH OF CONTRACT — STATUS IN COURT OF CLAIMS. A breach of its contract by the state creates a valid cause of action and the immunity from suit, arising from its sovereignty, merely prevents its enforcement. When, however, the state has confer-red upon a court jurisdiction to hear and determine all claims against it or all claims of a particular class, the situation in that court is the same as if the claim was against a private individual or corporation.

2. COURT OF CLAIMS — WHEN POSSESSED OF JURISDICTION OF CLAIM AGAINST STATE WITHOUT SPECIAL STATUTE AUTHORIZING ITS SUBMISSION. Under the provisions of section 264 of the Code of Civil Procedure, as it was in January, 1903, the Court of Claims had "jurisdiction to hear and determine a private claim against the state," where such claim rested on a legal obligation, except "a claim submitted by law to any other tribunal or officer for audit or determination." In cases of claims, founded on moral or equitable obligations, it was necessary that there should be some statute expressly authorizing such court to hear and adjudicate them; in other cases, including those based upon an alleged breach of contract by the state, the court had power, without special statute, to determine the validity of the claims, unless they were withdrawn from its jurisdic-tion by the express terms of the statute.

3. CLAIM AGAINST STATE FOR WORK DONE UNDER CONTRACT — WHEN
IT MUST BE SUBMITTED TO COMPTROLLER FOR AUDIT — WHEN COURT
OF CLAIMS HAS NO JURISDICTION — REMEDY, WHERE COMPTROLLER
EXCEEDS HIS POWER.  A claim against the state for work performed
under a contract, for the payment of which money has been provided
under the appropriation or supply bills, must, under section 4 of the State
Finance Law (L. 1897, ch. 413), be presented to the comptroller for audit,
and must be deemed withdrawn from the jurisdiction of the Court of
Claims by that portion of section 264 of the Code of Civil Procedure pro-
viding that such court "has no jurisdiction of a claim submitted by law
to any other tribunal or officer for audit or determination." If the comp-
troller exceeds his power in allowing, as payment, less than the contract
price, the claimant's remedy is by direct proceeding against him to review
that audit.

- *Quayle* v. *State of New York*, 124 App. Div. 81, affirmed.

(Argued April 6, 1908; decided April 14, 1908.)

APPEAL from so much of a judgment of the Appellate
Division of the Supreme Court in the third judicial depart-
ment, entered January 11, 1908, as affirmed a judgment of
the Court of Claims in so far as it dismissed the plaintiff's
claim as to the first cause of action therein set forth.

The facts, so far as material, are stated in the opinion.

*William J. Roche* and *George H. Stevens* for appellant.
The Court of Claims has always had jurisdiction, without a
special act of the legislature, to hear and determine a private
claim arising upon or out of a contract lawfully made with the
state.  (*Cayuga County* v. *State*, 153 N. Y. 288; *Remington*
v. *State*, 116 App. Div. 522; *Lord* v. *Thomas*, 64 N. Y. 109;
*Danolds* v. *State*, 39 N. Y. 44; *Schaub* v. *State*, 88 App. Div.
618; 183 N. Y. 561; *McMasters* v. *State*, 103 N. Y. 547; 108
N. Y. 542; *Parmenter* v. *State*, 135 N. Y. 154; *Peck* v. *State*,
137 N. Y. 372.) The provisions of article 1, title 3, of the Code
of Civil Procedure relative to the Court of Claims, show that
the legislature therein and thereby intended to establish a
judicial tribunal, and to confer upon it jurisdiction to pass
upon private claims against the state; and, as will be seen
from perusal of the various sections of that article, the usual
(and ample) provisions were made for the creation, jurisdic-

tion and operation of the court and the safeguarding of the interests of the state. (*O'Hara* v. *State of New York,* 112 N. Y. 146; *Coster* v. *Mayor, etc.,* 43 N. Y. 399; *People* v. *Denison,* 8 Abb. [N. C.] 128; 84 N. Y. 272; *Ballou* v. *State,* 111 N. Y. 496; *Woodman* v. *State,* 127 N. Y. 397; *Sipple* v. *State,* 9 N. Y. 284; *Cole* v. *State,* 102 N. Y. 48; *Lewis* v. *State,* 96 N. Y. 71; *Rexford* v. *State,* 105 N. Y. 229; *Locke* v. *State,* 140 N. Y. 480.) Claimant's claim for the balance unpaid for printing done and materials furnished has not been submitted by law to any other tribunal or officer for audit or determination, so as to deprive the Court of Claims of jurisdiction to hear and determine the same. (1 R. S. pt. 1, ch. 8, tit. 3, §§ 1, 13; R. S. [9th ed.] p. 1653; L. 1872, ch. 115; R. S. [9th ed.] p. 2330; *People ex rel. Grannis* v. *Roberts,* 163 N. Y. 70; *Matter of O'Berry,* 179 N. Y. 285.)

*William S. Jackson, Attorney-General (Timothy J. Dillon* of counsel) for respondent. The Court of Claims had no jurisdiction of the cause of action set forth in the first count of the claimant's claim because it was a claim submitted by law to an officer for audit. (L. 1897, ch. 413, § 4; 1 R. S. [1st ed.] pt. 1, ch. 8, tit. 3, art. 1, § 1; *People ex rel. Grannis* v. *Roberts,* 163 N. Y. 70.)

CULLEN, Ch. J. In pursuance of the provisions of the statute, in November, 1900, a contract was entered into by the state officers on behalf of the state and one Williams, whereby said Williams agreed to do the public printing, other than legislative printing, during the years 1901 and 1902, for certain specified prices. With the consent of the public officers Williams assigned the contract to the claimant Quayle, who performed it. In January, 1903, the appellant filed a claim in the Court of Claims founded upon two causes of action : 1*st,* for the alleged balance due him on the printing actually done under the contract ; 2*nd,* for an alleged breach of the contract, in that the state had given some of the printing to which the claimant was entitled under the contract to

4

third parties. At the close of the evidence the Court of Claims dismissed the claim as to each cause of action. The Appellate Division affirmed the dismissal as to the first cause of action, but reversed as to the second. The claimant has appealed to this court from so much of the judgment of the Appellate Division as affirmed the judgment of the Court of Claims.

The jurisdiction of the Court of Claims is defined by section 264 of the Code of Civil Procedure, which, at the time of the filing of the claim in suit, was as follows: "The court of claims possesses all the powers and jurisdiction of the board of claims. It also has jurisdiction to hear and determine a private claim against the State, which shall have accrued within two years before the claim is filed. It may also hear and determine any claim on the part of the state against the claimant, or against his assignor, at the time of the assignment; and must render judgment for such sum as should be paid by or to the state. But the court has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination." It appears from the opinion of the Court of Claims that that learned court, while conceding that the statute was broad enough to confer upon the court authority to hear and determine all private claims, held that the claim must first be recognized by the state by some statute referring it to the court for adjudication. The theory upon which the court reached this conclusion is substantially this: That because of the immunity from suit of the state as sovereign, there can be no such thing as a valid claim against the state until it has recognized it as such. We think this view of the effect of the state's immunity from suit is entirely erroneous. The fact that it may be impossible to enforce a claim does not prove that the claim is not valid. The Federal Constitution inhibits the state from passing any law impairing the obligation of contracts, and this provision applies to contracts with the state itself as well as to those of third parties. (*Danolds* v. *State of N. Y.*, 89 N. Y. 36.) Therefore, a breach of its contract by the state creates a valid cause of

action.   Immunity of the state from suit merely prevents its enforcement.   When, however, the state confers upon a court jurisdiction to hear and determine all claims against it, or all claims of a particular class, the situation in that court is the same as if the claim were against a private individual or corporation.   There are cases in which the claims against the state rest not on legal, but on moral or equitable obligations which the state may recognize or refuse to recognize at its pleasure. Such were the cases of *Cole* v. *State of N. Y.* (102 N. Y. 48) ; *O'Hara* v. *State of N. Y.* (112 id. 146) and *Suprs. of Cayuga Co.* v. *State of N. Y.* (153 id. 279).   In none of these cases, even had the state been subject to suit the same as an individual, could a court have awarded judgment against it.   The obligation against the state was an imperfect one, which being founded in right and justice, this court held the state could recognize and satisfy, but until recognized it had no legal force.   Doubtless in cases of this character it is necessary that there should be some statute expressly authorizing the Court of Claims to hear and adjudicate the claim, but in other cases the court has power, without special statute, to determine the validity of a claim unless it is of a character which by the terms of the Code is withdrawn from its jurisdiction.

The Appellate Division, while repudiating the doctrine of the court below, sustained its decision as to the first cause of action on the ground that the qualification expressed in the section of the Code cited, to the effect, "But the court has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination," withdrew from the jurisdiction of the Court of Claims any claim for money earned under the contract.   By section 4 of the State Finance Law (L. 1897, ch. 413) it is made the duty of the comptroller to "Examine, audit and liquidate the claims of all persons against the state if payment thereof out of the treasury is provided for by law."   It would seem, therefore, that any claim for money earned under the contract was the subject of audit by the comptroller.·   The learned counsel for the appellant, however, contends that this is giving too broad

a construction to the qualification expressed in the Code, that
that qualification or exception should be limited to such claims
of a special character as are made the subject of allowance by
some particular officer or board of officers, such as a reclama-
tion of purchase money paid for state lands on a failure of
title, which must be presented to the commissioners of the
land office ; a claim for the destruction of a canal boat
obstructing the navigation of the canals, which must be pre-
sented to the superintendent of public works, and a claim for
over-paid taxes, which must be presented to the comptroller.
The learned counsel further relies on the fact that no such
limitation was imposed upon the predecessors of the Court of
Claims, the State Board of Audit (L. 1876, ch. 444), and the
Board of Claims (L. 1883, ch. 205), and that the exception was
first prescribed by the statute of 1897 (Ch. 36) creating the
present Court of Claims and prescribing the procedure therein.
It is possible that under the broad language of the earlier stat-
utes any claim against the state might have been presented
either to the Board of Audit or Board of Claims, though we
very much doubt if it was the intent of the legislature to confer
on either body jurisdiction to determine claims arising out of
the current expenses of the state government to defray which
appropriations were annually made.    In the opinion rendered
by Chief Judge PARKER in the case of *People ex rel. Grannis*
v. *Roberts* (163 N. Y. 70) is to be found a most elaborate and
careful review of the history of the powers of the comptroller
over the audit of claims from the earliest period in the his-
tory of this state.    He shows that, with the exception of a
period of about one year — an intermission apparently due
to accident, not design — the comptroller always possessed
the power of auditing claims against the state, and that pay-
ments could not be enforced from the state treasury without
such audit.    The creation of the Board of Audit, the Board of
Claims and the present Court of Claims was rendered necessary
by the constitutional amendment of 1874, which enacted that
the legislature should neither audit nor allow any private
claim or account against the state, but might appropriate

money to pay such claims as should have been audited and allowed according to law. (Art. 3, § 19.) Previous to this constitutional amendment, the only officer or tribunal authorized to adjust claims against the state (with a few exceptions) was the comptroller, and he was limited to claims, the payment of which had been provided by law. The Revised Statutes (Vol. 1, p. 170, § 1, subd. 7) made it his duty " To examine and liquidate the claims of all persons against the state, in cases where provision for the payment thereof shall have been made by law ; and where no such provision, or an insufficient provsion shall have been made, to examine the claim and report the facts, with his opinion thereon, to the legislature." The Constitution having inhibited the enactment of private statutes in such matters, the legislature created the various tribunals which have been mentioned. Nevertheless, the power of the comptroller to audit claims for the payment of which there had been appropriations remained unaffected. It is difficult to believe that the legislature in creating the Board of Audit or of Claims intended to leave it optional with any claimant to apply either to the comptroller or to the board for an audit of his claim, or to allow an appeal from the comptroller to the board. The legislature doubtless intended to confer on the boards power to adjudicate those claims which lay beyond the auditing power of the comptroller, and for the allowance of which the only method, previous to the constitutional amendment, had been direct action by the legislature. As already said, the language of the statute previous to 1897 may have been too broad to permit of this limitation, but the question was definitely set at rest by the enactment in that year of section 264 of the Code of Civil Procedure. The first cause of action of the claim in this case was for work done under the contract for the payment of which money was provided under the appropriation or supply bill. We hold that claims for such current expenses of the state government as are provided for by those statutes must be presented to the comptroller for audit. The question whether, where the comptroller has refused audit because the

appropriation has been exhausted, a claim may be submitted to the Court of Claims, it is unnecessary to determine. The evidence in this case, while it shows arbitrary action on the part of the comptroller in cutting down the claimant's bill for work done, plainly establishes that he did act upon these bills, audit and liquidate them. If the comptroller exceeded his power in allowing as payment less than the contract prices, the claimant's remedy was by direct proceeding against him to review that audit. We think the Appellate Division was right on both the propositions which we have discussed, and that its judgment should be affirmed, with costs.

GRAY, HAIGHT, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment affirmed.