DOROTHY GREEN, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

## Claim No. 15391.

(Court of Claims, State of New York, June, 1919.)

Negligence — when state not liable for, of chauffeur employed at State College of Agriculture — claim against state dismissed.

> Where it appears that a chauffeur employed at the State College of Agriculture at Cornell University was hired for the corporation by a professor with the approval of the dean of the college, who in turn had been appointed and was employed by the university, and it further appears that no state officer had power to hire, discharge or direct the trustees of the university, the dean, the professor who employed the chauffeur or the chauffeur in the performance of their several duties, and that their services were rendered not for the state but solely for the university, the state is not liable for the negligence of the chauffeur in so operating the car he was driving as to collide with another vehicle, and a claim against the state based on his negligence will be dismissed.
>
> The chauffeur is not an employee of the state but of Cornell University, upon which, by law, rested the duty of conducting and administering the College of Agriculture.
>
> The situation is not changed by the fact that the state makes appropriations in aid of the college or that the appropriation acts limit the amount of the state's appropriation for salaries.

CLAIM for damages for injuries received by claimant upon a public highway.

Olmsted, Van Bergen & Searl, for claimant.

Edward M. Brown, deputy attorney-general, for State.

SMITH, J.   This claim is for damages for injuries received by claimant on September 12, 1917, as the result of a collision upon a public highway between an automobile in which claimant was a passenger and another driven by one Foster, a chauffeur employed at the College of Agriculture at Cornell University, claimant alleging that the collision was occasioned solely by the negligence of Foster and that the latter was a servant of the state for whose negligence the state is liable, according to the rule *respondeat superior.*

The claim was tried at the Syracuse term on September 25, 1918.   Upon the opening of the trial counsel for the state moved to dismiss the claim upon the ground that the claimant's claim or notice of claim fails to state facts sufficient to constitute a cause of action against the state, specifying as a particular ground of the motion that the chauffeur was not a servant of the state but of Cornell University, and therefore that the state was not responsible for his negligence, and also that if Foster was the servant of the state, the state in establishing, maintaining and administering the College of Agriculture was exercising a governmental function, and hence was not liable. This motion was denied, with leave to renew at the close of the case.

At the close of claimant's case counsel for the state moved to dismiss the claim upon the ground that the claimant had failed to make out a case against the state upon the same grounds as urged in support of his first motion, which motion was also denied.

At the close of the whole case counsel for the state renewed both motions for dismissal, upon the grounds previously assigned, and decision thereof was reserved for further consideration.

The motion should be granted. The evidence establishes the fact that the chauffeur Foster was not the servant of the state but of Cornell University, a private corporation.

Cornell University was organized as a corporation following the enactment by Congress of the so-called Land Grant Act, which was approved on July 2, 1862. This Land Grant Act donated to each state of the United States an amount of public land equal to 30,000 acres for each senator and representative in congress to which the state might be entitled, as stated in the act, "for the benefit of agriculture and the mechanic arts." This land was to be sold by the state, and the moneys which were received from the sale thereof to be invested by the state in stocks of the United States, or of the state, or in some other safe stocks yielding not less than five per cent per annum upon the par value of said stocks and the moneys so invested were to constitute a perpetual fund, the capital of which was to remain forever undiminished, and the interest of which was to be, by the terms of said act, *inviolably* appropriated to the endowment, support and maintenance of at least one college where the *leading* object should be to teach such branches of learning *as relate to agriculture* and the mechanic arts, in such manner as the legislatures of the states might respectively prescribe, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions in life.

Following the passage of the Land Grant Act, and in furtherance of and in compliance with its provisions, the legislature of New York enacted chapter 585

of the Laws of 1865, incorporating Cornell University. This act constituted Ezra Cornell and nine associates named in the act a body politic and corporate to be known as the Cornell University, to be located in the town of Ithaca, in the county of Tompkins, expressly vesting in said corporation all the rights and privileges necessary to the accomplishment of the object of its creation, as declared in the act, and declared that in the performance of its duties it should be subject to the provisions of and might exercise the powers enumerated and set forth in the 2d article of the 15th chapter of title 1 of the Revised Statutes of the state. The powers enumerated in that portion of the Revised Statutes referred to in the act of incorporation were the general powers of government and administration appropriate to educational institutions. Section 2 of the incorporation act provided that the governor, the lieutenant governor, the speaker of the house of assembly, the superintendent of public instruction, the president of the State Agricultural Society, the librarian of the Cornell library, and the oldest male lineal descendant of Ezra Cornell should be *ex officio* members of the board of trustees of the corporation; that said board should consist of seventeen trustees, exclusive of the *ex officio* trustees, and that to make up that number the incorporators should choose seven other persons to act with themselves as members of the board of trustees. The act of incorporation provided that the farm and grounds to be occupied by the corporation whereupon its buildings should be erected, as directed and provided, by the trustees, should consist of not less than 200 acres.

The leading object of the corporation was declared by the act to be " to teach such branches of learning *as are related to agriculture* and the mechanic arts, including military tactics; in order to promote the

liberal and practical education of the industrial classes in the several pursuits and professions in life. But such other branches of science and knowledge may be embraced in the plan of instruction and investigation pertaining to the university as the trustees may deem useful and proper.''

It was provided that the corporation might hold real and personal property to an amount not exceeding $3,000,000 in the aggregate.

The act further provided that the income, revenue and avails which should be received from the investment of the proceeds of the sale of the lands, or of the scrip therefor, or of any part thereof, granted to the state by the act of Congress of 1862, above referred to, were thereby appropriated to the trustees of the corporation for its use and behoof, in the mode and for the purposes in said act of Congress defined; provided, however, that no part of such payment should be made unless the trustees should prove to the satisfaction of the comptroller within six months after the passage of the act that the corporation possessed a fund of five hundred thousand dollars, at least, given by Ezra Cornell of Ithaca, absolutely and without any limitation, restriction or condition whatsoever, except such as might be in accordance with the provisions of the act of incorporation, nor unless certain other specified conditions were complied with.

The act also provided that the trustees of the university, if they should become entitled to the benefits of the act, should make provision to the satisfaction of the regents in respect to buildings, fixtures and arrangements generally within two years from the passage thereof to fulfill the provisions of the aforesaid act of Congress, and that they should also make all reports and perform such other acts as might be necessary to conform to the act of Congress aforesaid,

and that the university should be subject to the visitation of the regents of the university of New York.

It was further provided that the several departments of study in the university should be open to applicants for admission at the lowest rates of expense consistent with its welfare and efficiency, without distinction as to rank, class, previous occupation or locality, and with a view to equalizing its advantages to all parts of the state, that it should annually receive students, one from each assembly district of the state, to be selected as the result of competitive examinations, for instruction in any or all the prescribed branches of study in any department of the university, free of any tuition fee or of any incidental charges to be paid to the university, except such incidental charges as might be made to compensate for damages heedlessly or purposely done by students to the property of the university.

The right and power of the legislature to at any time alter or repeal the act of incorporation was expressly reserved in the act.

The result of this legislation was to make the state the trustee of the lands donated by Congress, and of the scrip representing such lands, and of the proceeds resulting from the sale of such lands or scrip, and to make the corporation, Cornell University, the beneficiary of such trust, obligated by the law of its creation to maintain an institution " to teach such branches of learning as are related to agriculture and the mechanic arts, including military tactics," and to receive annually into such institution for instruction during the period of its prescribed courses, free of tuition charge, one student from each assembly district of the state, which burden or obligation was placed upon the corporation by the state and assumed by the corporation, because and in consideration of the fact

that it was to receive the revenue from a large sum of money, free and clear of all expense in relation thereto. *People ex rel. Cornell University* v. *Davenport,* 117 N. Y. 549.

This relation so established continued down to and existed at the time of the accident out of which this claim arose, and during all of that time the institution of learning maintained and conducted by the corporation has been by law primarily an agricultural college. The charter of the corporation has been many times amended by the legislature, but never in such manner as to alter the character of the relation between the state and the corporation established by the incorporating act of 1865. The statutory provisions which at the time of the accident constituted its charter are to be found in sections 1030 to 1039, both inclusive, of the Education Law (Laws of 1910, chap. 140), its original act of incorporation having been twice repealed. Laws of 1909, chap. 21, § 2000; Laws of 1910, chap. 140, § 1200. The present charter provision continuing the corporation expressly preserves to it all the rights and subjects it to all the liabilities " contained in the act of incorporation, being laws of eighteen hundred and sixty-five, chapter five hundred and eighty-five, as amended."

As the university established by the corporation developed, appropriations from the state treasury were made from time to time for various objects consistent with the general objects of the corporation and in the public interest, as, for example, for the erection of a building for instruction in dairy husbandry, for horticultural experimentation, for buildings for a veterinary college, for a forestry department, for its agricultural experiment station, and for its department of agriculture. The corporation also receives moneys paid directly to it each year by the federal

government pursuant to congressional appropriation, for its college of agriculture, to foster and support activities which to some extent supplement and overlap activities fostered by state appropriations. Act of Congress approved August 30, 1890; Act of Congress approved March 2, 1887; Act of Congress approved March 16, 1906; Agricultural Law, § 309. That there was a college of agriculture at Cornell University prior to the enactment of chapter 655, Laws of 1904, appears by the fact that chapter 430 of the Laws of 1899 made an appropriation of $35,000, or so much thereof as might be necessary, to Cornell University for its College of Agriculture, " to be expended in giving instruction throughout the state by means of schools, lectures and other university extension methods, or otherwise." An officer of the university also testified upon the trial that the corporation conducted a college of agriculture prior to the passage of chapter 655 of the Laws of 1904.

Chapter 655 of the Laws of 1904 appropriated the sum of $200,000 " for the purpose of constructing and equipping a suitable building or buildings for a state college of agriculture at Cornell University, upon the grounds of said university, at Ithaca, New York, to enable it to carry on efficiently the work of instruction and investigation in agriculture for the state " and provided further " *Said buildings* shall be known as the New York state college of agriculture at Cornell University, and such buildings and equipment shall be and remain the property of the state." The act specified generally what buildings should be built, and limited the cost of each thereof, and of the equipment, and provided that before any part of such appropriation should become available the land on which the buildings were to be constructed should be conveyed to the people of the state by the university; that the

university should, during the pleasure of the state, have complete control over the land thus conveyed and the buildings when erected thereon, for the purpose of maintaining an agricultural college, as fully as if no conveyance had been made, and that if at any time such buildings should cease to be available to the university for use as an agricultural college, through an act of the legislature abolishing the same, the land and buildings should revert to the university, but in that case the reversion should be conditioned upon the payment by the university to the state of the then duly appraised value of the buildings. The act also provided for supervision by specified state officers of the construction of buildings and the manner of payment therefor; and further provided as follows: " Nothing in this act shall be construed to relieve Cornell University of any of its obligations to the state to provide for instruction in agriculture or otherwise, *and the provisions of this act are intended to provide additional facilities therefor.*"

There is nothing in the act of 1904 to support the contention that the state intended thereby to take upon itself the function of conducting a college of agriculture at Cornell University, or to relieve the university corporation from its duty in that regard. In fact, the contrary conclusively appears from the language of the act above quoted, declaring that the act should not be so construed.

In 1906 the legislature passed the so-called Administration Act, Laws of 1906, chapter 218, which was repealed in 1909 and again in 1910 (Laws of 1909, chapter 21; Laws of 1910, chapter 140), and the provisions of law relating to the administration of the college of agriculture are and at the time of the accident in question were to be found in section 1039 of

the Education Law (Consol. Laws, chapter 16; Laws of 1910, chapter 140.)

I find nothing in section 1039 of the Education Law indicating that it was the intention of the legislature to alter in any substantial way its policy with regard to Cornell University or its college of agriculture, or the obligation of the university to maintain and conduct such college. To provide funds and facilities in aid of the university was by no means a new policy. The state had repeatedly rendered such aid before. While, by the provisions of the act of 1904, which remains unrepealed, and of section 1039 of the Education Law, the buildings and equipment of the college remain the property of the state, the custody and control of the property is given to the university which was charged by its charter and remains charged with the duty of administering the college, with authority to appoint investigators, teachers, and other officers and employees, to lay out lines of investigation, to prescribe the requirements for admission and the course of study, and with such other power and authority as may be necessary and proper for the due administration of such college of agriculture. In conducting the college and administering its affairs it is doing its own work, not that of the state. *Hamburger* v. *Cornell University,* 184 App. Div. 403. The officers of the university are not in the terms of the statutes or by inference made state officers. They are required to take no oath of office, nor, as the evidence shows, are they subjected to the provisions of the Civil Service Laws of the state. They are not elected by the electors of the state, nor are they appointed by any state officer, board or body. Pub. Off. Law, § 2. While the university is required to furnish to the comptroller vouchers approved by the commissioner of agriculture for the expenditure of moneys which it receives from

the state, no state officer is charged by law with any power, responsibility or duty of control or regulation of or interference with the administration of the affairs of the college, the employment of its instruction staff or of any of the employees.

The chauffeur Foster was employed by Professor Wheeler, with the approval of the dean of the college. The dean was appointed and employed by the corporation. No state officer had power to hire, discharge or direct the trustees of the university, the dean of the college, Professor Wheeler or the chauffeur in the performance of their duties, nor were their services rendered for the state, but solely for the university.

The situation presented here is not unlike, in principle, that involved in *Gartland* v. *New York Zoological Society,* 135 App. Div. 163, which held the defendant corporation liable for the negligence of one of its employees in the course of work in connection with the use and occupancy by the defendant of certain property and buildings of the city of New York. The court in that case in discussing the question whether the servant was the servant of defendant or of the city of New York reviewed the authorities, and quoted with approval from the opinion of Folger, J., in *Maxmilian* v. *Mayor,* 62 N. Y. 160, the language: " This rule of *respondeat superior,* is based upon the right which the employer has to select his servants, to discharge them if not competent, or skillful or well behaved, and to direct and control them while in his employ (*Kelly* v. *Mayor,* 11 N. Y. 432). The rule has no application to a case in which this power does not exist (*Blake* v. *Ferris,* 5 N. Y. 48). It results from the rule being thus based, that there can be but one superior at the same time and in relation to the same transaction." The facts here shown bring this claim within the doctrine there stated. To hold that Foster was the servant

of the state would be to hold that the state was conducting and administering the college of agriculture, a duty and responsibility which we have seen has been placed by law upon Cornell University. The situation is not changed by the fact that the state makes appropriations in aid of the college or that appropriation acts limit the amounts of the state's appropriations which may be expended for indicated objects, for example salaries. The appropriation acts do not in terms or in practice fix salaries. They·only limit the amounts of the state's moneys which may be used to pay such salaries. In fact Mr. Bostwick, treasurer of the corporation, testified that the salaries of some of the professors are greater than the amounts stated in the state's appropriation acts, the excess being made up by moneys received from the federal government for activities which in instances overlap activities required by state laws. All appropriations, federal and state, are paid to the corporation and all salaries are paid by the check of the treasurer of Cornell University, and those who so receive their salaries are the servants of Cornell University, not of the state of New York.

If, however, Foster was the servant of the state, the state would not be liable upon the facts of this case. The state is not liable in damages for torts committed by its agents or servants, unless such liability has been voluntarily assumed by act of the legislature. *Lewis* v. *State of New York,* 96 N. Y. 71; *Sipple* v. *State of New York,* 99 id. 284; *Stone* v. *State of New York,* 138 id. 124; *Litchfield* v. *Bond,* 186 id. 66. This principle is conceded by counsel for claimant who, however, insists that by the enactment of section 264 of the Code of Civil Procedure, the state has abdicated this attribute of its sovereignty and has consented to be held liable in every case in which an

individual or a corporation would be held liable on the same facts, and cites in support of such contention *Arnold* v. *State of New York,* 163 App. Div. 253; *Quayle* v. *State of New York,* 192 N. Y. 47; *Burke* v. *State of New York,* 64 Misc. Rep. 558; 13 Court of Claims, 153; *Munro* v. *State of New York,* 223 N. Y. 208; *Smith* v. *State of New York,* 17 Court of Claims, 98; 13 State Dept. Rep. 57.

The *Quayle* case is not an authority for the contention urged by claimant. It decided not the liability of the state but the jurisdiction of the Court of Claims in the case then before it. While it used the language " When, however, the state confers upon a court jurisdiction to hear and determine all claims against it, or all claims of a particular class, the situation in that court is the same as if the claim were against a private individual or corporation," in using that language, it was speaking of jurisdiction, and of the power of the Court of Claims to hear and determine the claim then before it, which was a claim arising on contract, and was not discussing the question of liability or whether the state had by appropriate legislation consented to be held liable in every case and upon the same facts which would establish a liability against an individual or corporation.

The *Munro* case was one where the legislature had passed a special act which the court held did in terms assume liability, the language of the act being in part " and if the court finds that such injuries were so sustained, damages therefor *shall constitute a legal and valid claim against the state,* and the court shall award to and render judgment for the claimant for such sum as shall be just and equitable," etc.

The *Arnold, Burke* and *Smith* cases support claimant's contention in this regard, it having been held in those cases substantially that by the enactment of sec-

tion 264 of the Code of Civil Procedure the state had consented to be held liable in every case where an individual or corporation would be liable upon the same facts. Those cases have, however, been, in part at least, overruled by *Barrett* v. *State of New York,* 220 N. Y. 423. In that case it was held by the Court of Appeals that it is not true that whenever an individual is liable for a certain act the state is liable for the same act. Whether it was the intention of the Court of Appeals in the *Barrett* case to overrule utterly the *Arnold, Burke* and *Smith* cases, or to state a class of exceptions to the rule stated in those cases it is not necessary for the purposes of this case to hold, for if the intention were the former, the rule is repudiated, and, if the latter, this claim falls within the excepted class, because if the state is conducting and administering the college of agriculture at Cornell University it is acting as a government, as a trustee for the people, and as their representative it is doing what it has thought best for the interests of the public at large, in continuance of a policy which has obtained for many years, and under such circumstances it cannot be held liable for the negligence of its servants, for the rule *respondeat superior* does not in such circumstances at least apply to the state.

Having reached the conclusion that the claim should be dismissed upon the law, there are no findings on the question of negligence.

ACKERSON, P. J.. I concur in the result arrived at by Judge Smith, but I do not agree with him in his construction of the scope, effect and purpose of section 264 of the Code of Civil Procedure.

CUNNINGHAM, J., concurs with ACKERSON, P. J.

Claim dismissed.