Honorable Edward V. Regan Comptroller of the State of New York Department of Audit and Control
This is in response to the inquiry of your counsel whether Cornell University should transmit to the State Treasury out of compensation received by the University's statutory colleges from grants and contracts, the portion that represents recovery of expenditures for overhead expenses covered by State appropriations. Your counsel cites State Finance Law, § 121, which, of course, is the general statutory authority for transmission of funds to the State Treasury. Section 121 requires every State officer, employee, department, institution, commission, board or other agency receiving money for or on behalf of the State to pay it over to the State Treasurer subject to certain enumerated exceptions not applicable here.
The statutory colleges at Cornell receive a substantial amount of funding through federal, state and local government grants and contracts as well as from gifts, grants and contracts from other outside sources such as foundations, corporations, alumni and research groups. Certain federal, state and local grants and contracts provide for recovery of overhead costs associated with the funded projects. Your counsel indicates that under current practice the overhead costs thus recovered remain with the colleges even though a substantial portion of such overhead costs have been paid initially with funds appropriated by the State Legislature.
The Cornell statutory colleges occupy a unique status. They are defined as colleges furnishing higher education operated by private institutions on behalf of the State pursuant to statute, Education Law §350(3). Even though they receive substantial support from legislative appropriations and their facilities remain the property of the State, the colleges themselves are subject to the control of Cornell University.* In many situations they have been recognized to have a separate and independent existence from the State.
Section 121 of the State Finance Law requires payment of funds into the State Treasury if the recipient of the money is a "state officer, employee, department, institution, commission, board or other agency of the state" and if the money received is received "for or on behalf of the state". In varying circumstances in the past, the statutory colleges have been regarded as other than State agencies and money received by them as other than State money.
In 1899 this office considered the question of whether money received by teachers in the school of nature study in the then Department of the College of Agriculture at Cornell University as tuition from out-of-state students had to be turned over to the State Treasury under a predecessor section of section 121 of the State Finance Law. In the opinion of the Attorney General, this was not required, since this was not an institution of the State over which the State had supreme control and the money did not appear to be received by a state officer, employee, board, department or commission in behalf of the State (1899 Op Atty Gen 327).
In 1928 this office ruled that while the statutory colleges at Cornell University were institutions supported by the State and subject to the supervision of the Education Department, their teachers and employees were not State employees covered by the State Insurance Fund (1928 Op Atty Gen 215).
The State has been held not liable for the negligent operation of an automobile by a statutory college employee (Green v State, 107 Misc. 557
[Ct of Claims, 1911]). In a companion case, Green v Cornell University,193 App. Div. 924 (4th Dept, 1920), affd 233 N.Y. 519, based on the same occurrence, it was held that Cornell University had to answer for the negligence of the employee of the statutory college.
Again, a claim for damages arising out of the negligence of a statutory college was dismissed as against the State since it involved a tort of Cornell University rather than of the State (Effron v State, 208 Misc. 608
[Ct of Claims, 1953]). The Court in the Effron case noted that the transfer of the particular statutory college into the State University system did not change the previous conclusion that the State was not liable.
Besides the separate status of the statutory colleges for various purposes, there appears to be statutory authority under various provisions of the Education Law for such colleges to retain overhead recoveries.
Thus, Cornell University is directed to keep all money appropriated for the New York State College of Veterinary Medicine or "derived from other sources in the course of administration thereof" in a separate fund exclusively for the College of Veterinary Medicine (Education Law, §5711 [3]). Similarly, Cornell University is directed to keep in a separate fund all money appropriated for the New York State College of Agriculture and Life Sciences or "derived from other sources in the course of administration thereof" (Education Law, § 5712[3]). Similarly, Cornell University is directed to keep in a separate fund all money appropriated for the New York State College of Human Ecology or "derived from other sources in the course of administration thereof" (Education Law, § 5714 [4]). Finally, all money received by Cornell University in the course of administration of the New York State School of Industrial and Labor Relations from tuition, fees and other charges is to be used exclusively for that school (Education Law, §5715 [6] [c]).
Implicit in these provisions is legislative recognition that the statutory colleges do receive income that is not to be paid into the State Treasury. These references to money derived from other sources in the course of administration are expressed in broad terms and are comprehensive enough to include overhead recoveries.
From all the foregoing I conclude that State Finance Law, § 121, does not apply to overhead cost recoveries received by the statutory colleges under grant and contract funding.*
While Cornell University is allowed to retain such overhead recoveries in the respective colleges' separate funds, the fact that the State through appropriations has borne much of the cost of such overhead should not be minimized. The State can insist that Cornell University employ appropriate accounting procedures and that the various colleges identify the amount and nature of overhead recoveries that are realized on grant and contract funded projects. Wherever feasible, Cornell should apply these overhead recoveries to cover the same or similar overhead costs at the respective colleges. When the Division of the Budget draws up the proposed executive budget and legislative committees review the fiscal needs of the statutory colleges, they should take into account the amounts of overhead recoveries on grants and contract funded projects of the statutory colleges actually received or anticipated. In that manner appropriations can give effect to the overhead recoveries realized by the statutory colleges.
* Such control has actually resulted in special responsibilities being placed on Cornell University itself. For example, in a recent caseHolden v Cornell University, 80 A.D.2d 378 (3d Dept, 1981), the Court held that meetings of the Cornell University Board of Trustees must be open to the public when involving the statutory colleges. The Board was regarded as a "public body" as defined by section 97 of the Public Officers Law, because it conducts public business and performs a governmental function for the State or an agency of the State.
* Chapter 405 of the Laws of 1981 substantially revises the State Finance Law. Although the chapter does not amend section 121, a new section 4 provides that no money under the State's management may be expended except under an appropriation. The Memorandum in Support of the amended version of the bill that became chapter 405 states:
 "Moneys managed by non-State agencies such as the statutory and contract colleges at Cornell University and Alfred University are exempt from the provisions of this section and the new section 53-b added by section eighteen of the bill because they are not State agencies."
 (Page 2. Section 53-b restricts applications for certain grant or contract-supported programs.)