Alan P. Lebowitz Formal Opinion General Counsel No. 2005-F2 Office of the New York State Comptroller 110 State St. Albany, New York 12236
Dear Mr. Lebowitz:
In a prior opinion of this office, we concluded that two state agencies cannot enter formal contracts with one another, but can execute memoranda of understanding to memorialize substantive aspects of interagency agreements. See 1980 Op. Att'y Gen. 81. You have asked whether, within the meaning of our prior opinion, agreements between state agencies and Cornell University to procure academic services from Cornell's "statutory or contract colleges" ("Statutory Colleges") should be regarded by the Office of the State Comptroller as memoranda of understanding between two state parties or as contracts between a state party and a non-state party. Because the governing statutes and case law emphasize Cornell University's autonomy over the administration of the Statutory Colleges with respect to academic matters, we conclude that such agreements should be viewed as contracts, not interagency memoranda of understanding.
BACKGROUND
A. Cornell's Statutory Colleges
Cornell University is a private institution incorporated under article 115 of the Education Law. See Education Law §§ 5701 et seq. Among its eighteen academic units, Cornell administers four colleges pursuant to specific statutory directives and contractual agreements between Cornell and the State. These statutory or contract colleges, which are situated on Cornell's campus, include the N.Y. State College of Veterinary Medicine, the N.Y. State College of Agriculture and Life Sciences, the N.Y. State College of Human Ecology, and the N.Y. State School of Industrial and Labor Relations. See Education Law §§ 5711, 5712, 5714, 5715.
"Statutory or contract colleges" are defined by the Education Law as "[c]olleges furnishing higher education, operated by independent institutions on behalf of the state pursuant to statute or contractual agreements." Education Law § 350(3). Although operated by independent institutions, they are part of the system of the State University of New York ("SUNY"), see Education Law § 352(3), and thus subject to the general supervision of the SUNY trustees, see id. §§ 355(1)(a), 357.
The Court of Appeals has noted "the hybrid statutory character" of the Statutory Colleges, describing them as "unique, sui generis institutions created by statute — public in some respects, private in others." Stoll v. N.Y. State Coll. of Veterinary Med., 94 N.Y.2d 162, 166, 167 (1999). Under the governing statutory scheme, "Cornell has significant autonomy over academic activities at the colleges but is accountable to the trustees of the State University of New York and other state agencies for the manner in which public funds are expended." Alderson v. N.Y. State Coll. of Agric. Life Sciences at Cornell Univ., 4 N.Y.3d 225, 227 (2005).
Cornell has been expressly authorized "as the representative of the [SUNY] trustees" to administer the Statutory Colleges
 as to the establishment of courses of study, the creation of departments and positions, the determination of the number and salaries of members of the faculty and other employees thereof, the appointment and employment thereof, the maintenance of discipline and as to all matters pertaining to its educational policies, activities and operations, including research work.
Education Law §§ 5711(2), 5712(2), 5714(3), 5715(6). The SUNY trustees must approve the appointment of the head of each Statutory College. Education Law § 355(1)(e).
The Statutory Colleges are supported in part by public funds. Alderson, 4 N.Y.3d at 227. Pursuant to the statutes governing each college, the SUNY trustees "maintain general supervision over requests for appropriations, budgets, estimates and expenditures" of the colleges. Education Law §§ 5711(3),5712(3), 5714(4); see id. § 5715(6)(c). All monies received during the course of administering a Statutory College are kept in a separate fund and are to be used by Cornell exclusively for that college. Funds appropriated by the State for a Statutory College may be expended by Cornell "upon vouchers approved by the chancellor" of SUNY, or by such person as the chancellor shall designate. Education Law §§ 5711(3), 5712(3), 5714(4),5715(6)(c). Cornell must submit an annual report to the SUNY trustees containing a detailed statement of the colleges' finances, and must consult the SUNY trustees regarding tuition for the colleges. Education Law §§ 5711(4)-(5), 5712(4)-(5),5714(5)-(6), 5715(6).
Additionally, although Cornell has custody and control over the buildings, furniture, and other property furnished by the State for each Statutory Colleges, such property remains the property of the State. Education Law §§ 5711(2), 5712(2),5714(3), 5715(5); see also id. § 355(1)(q),(r) (SUNY trustees have authority over facilities development for Statutory Colleges).
 B. Agreements Between Cornell and State Agencies for Services from the Statutory Colleges
Certain state agencies, including the Office of Children and Family Services ("OCFS") and the Office of Temporary Disability Assistance ("OTDA"), regularly enter into agreements with Cornell to procure services from the Statutory Colleges. Pursuant to those agreements, the Statutory Colleges offer various training programs that further the missions and purposes of the state agencies and provide job-related training to agency personnel. Training programs have addressed, for example, the improvement of the quality of residential childcare by means of therapeutic crisis intervention and institutional child abuse prevention. These training programs are provided by the Statutory Colleges as part of their academic mission.
You have indicated that in the past agreements between state agencies and Cornell for services from the Statutory Colleges have been treated by your office as Memoranda of Understanding ("MOUs") between two state agencies. However, more recently your office has requested that state agencies enter such agreements by contract. While recognizing that the Statutory Colleges are in part publicly funded, your office believes that the agreements are most appropriately treated as formal contracts, subject to the approval of the Comptroller, see State Finance Law § 112
(requiring that state contracts in excess of $15,000 be approved by the State Comptroller), rather than as interagency agreements. OCFS and OTDA have submitted correspondence expressing the view that the agreements should be regarded as MOUs in light of the unique hybrid statutory character of the Statutory Colleges. Alternatively, OCFS and OTDA suggest that the MOU format may be appropriate if Cornell, when it acts on behalf of a Statutory College to enter an agreement for services, acts as a "state agency" within the meaning of a 1980 opinion of this Office, which is summarized below.[1]
 C. The 1980 Opinion of this Office Regarding Agreements Between State Agencies
On June 9, 1980, we issued a formal opinion ("1980 Opinion") to SUNY concluding that two state agencies cannot enter into a contract with each other. 1980 Op. Att'y Gen. 81. A contract, we observed, requires at least two distinct contracting parties. Where two state agencies enter into an agreement, however, "there is only one entity — the State." Id. While state agencies are therefore precluded from forming contracts with one another, nothing precludes state agencies from entering into agreements setting out their respective rights and obligations, albeit agreements that are not enforceable by recourse to the remedies available under contract law. As we explained:
 Unquestionably, New York State agencies, departments, divisions, offices and other units can enter into "agreements" with each other, but they are not contracts in the context of the law of contracts. They are interagency memoranda of understanding about who is to do what, whose budget is to support what expenditures, who is to report to whom about the progress of the undertaking, who is to get the final product, if there is one, and the like. . . . In case of disagreement, the units could hardly sue each other; the dispute would have to be settled inside the State government.
Id.
As we also made clear, the reasoning of our 1980 Opinion applied only where entities of the State that have no separate legal status are the only parties to an agreement. Thus, state agencies may enter into contracts with municipalities or other local governmental units, and even with other "entities of the State," so long as those entities have separate legal status:
 This opinion is limited to those entities of the State that have not been created as separate legal entities. Many, but not necessarily all, public authorities and public benefit corporations created by the State are separate entities with which the State can contract. The State may, of course, enter into formal contracts with municipalities and other local governmental entities that have the power to enter into contracts. (We note that the State University itself is a "corporation" [Education Law § 352], but has been held to be "an integral part of the government of the State and when it is sued the State is the real party." State University of New York v Syracuse University, 285 App. Div. 59 [3d Dep't 1954].) An agency proposing to enter into an "agreement" with an authority or a corporation may have to determine whether a contract or an interagency memorandum of understanding is the appropriate document to use.
Id.
ANALYSIS
You have asked whether, pursuant to our 1980 Opinion, agreements between state agencies and Cornell to procure services from the Statutory Colleges are properly regarded by your office as MOUs or, alternatively, as contracts. Applying the principle that two state agencies cannot form a contract with one another is a complicated task here, for the Statutory Colleges are neither state agencies nor wholly private institutions. They are rather, as noted above, "hybrid" entities, "public in some respects, private in others." Stoll, 94 N.Y.2d at 166, 167. While Cornell, which enters the agreements on behalf of the colleges, is undoubtedly a private institution, it administers the Statutory Colleges as the representative of the SUNY trustees, who are themselves public officers. See Education Law § 353.
We note that the Legislature has expressly determined that the Statutory Colleges should be treated similarly to state agencies for certain purposes.[2] However, no statute directly controls the situation presented here; no statute, that is, expressly determines whether vel non the Statutory Colleges, or Cornell as their administrator, are state agencies for purposes of entering agreements for services. Cf. State Finance Law § 53 — a(5)(b) (defining "state agency" for purposes of applications for state participation in certain federally-funded programs as including institutions authorized by law to act as agent for the State, including Cornell University as representatives of the SUNY trustees for the administration of the statutory colleges).
The Statutory Colleges, in keeping with their hybrid character, and Cornell itself insofar as it administers the colleges, have been treated by the courts like state or public entities for some purposes and like private entities for others. Thus, the colleges have been held to be non-state entities where plaintiffs have sought damages from the State for tortious conduct allegedly committed by the colleges or their employees. See, e.g., Effron v. State, 208 Misc. 608 (Ct.Cl. 1953); Green v. State, 107 Misc. 557 (Ct.Cl. 1919). The Court of Appeals has determined that for purposes of New York's Freedom of Information Law ("FOIL"), which applies to state and other public agencies, the nature of the documents being sought will determine whether they are subject to the statutory disclosure requirements: for example, Cornell's disciplinary records relating to the Statutory Colleges need not be disclosed, Stoll, 94 N.Y.2d at 168, nor documents "pertaining to research and other academic activities" of the Statutory Colleges, since those are matters over which Cornell "exercises complete autonomy and control." Alderson,4 N.Y.3d at 232. But documents "involving financial records and expenditures or sources of funding" for the Statutory Colleges are subject to FOIL, since "[t]he Legislature did not cede complete control of financial issues to the discretion of Cornell." Id. at 232, 233. Additionally, the Third Department has held that where Cornell's Board of Trustees addresses matters relating to the Statutory Colleges, its deliberations must be open to the public pursuant to the Open Meetings Law, on the ground that the Board is then "conduct[ing] public business and perform[ing] a governmental function for the State." Holden v. Bd. of Trustees of Cornell Univ., 80 A.D. 2d 378, 381 (3d Dep't 1981).
Given the lack of clear legislative or judicial direction, in order to determine whether the agreements at issue are in the nature of contracts or interagency MOUs, we first review the reasoning on which our 1980 Opinion was based. Central to that opinion was the axiom that no formal contract exists where a single party purports to take on contractual obligations to itself. Thus, we observed that a putative indemnification clause in an agreement between state agencies was without force, since "the State can hardly indemnify itself." 1980 Op. Att'y Gen. 81. Relatedly, we intimated that no contract exists where the terms of an agreement are not enforceable by means of contract remedies. We emphasized that should a dispute arise among the parties to an interagency MOU, it could not be resolved by litigation. "[T]he dispute would have to be settled inside the State government." Id. We concluded our analysis with the observation that "[t]his opinion is limited to those entities of the State that have not been created as separate legal entities." Id. A state entity is not "separate" for these purposes, we suggested, where, as with SUNY, the entity separately incorporates but remains "`an integral part of the government of the State and when it is sued the State is the real party.'" Id. (quoting State Univ. of N.Y. v. Syracuse Univ., 285 A.D. 59, 61
(3d Dep't 1954)).
Application of that reasoning to the circumstances here suggests that the agreements about which you have inquired are in the nature of contracts, rather than interagency MOUs. Central to our conclusion is the fact that Cornell has been granted autonomy over the administration of the Statutory Colleges with respect to academic matters. See Education Law §§ 5711(2),5712(2), 5714(3), 5715(6); Alderson, 4 N.Y.3d at 227. That is, when a state agency enters an agreement with Cornell regarding the provision of academic services by a Statutory College, the agreement concerns matters over which Cornell exercises autonomy and control. Additionally, as noted, the "hybrid" character of the Statutory Colleges notwithstanding, when a claim is brought for negligence on the part of a Statutory College, Cornell, not the State, is the real party in interest. See Green v. Cornell Univ., 233 N.Y. 519 (1922); Neish v. John Deere Co.,118 Misc.2d 459, 460 (Sup.Ct. 1983); Effron, 208 Misc. 608; Green,107 Misc. 557. Similarly, faculty and staff at the Statutory Colleges have been deemed employees of Cornell, not of the State. Neish,118 Misc.2d at 460; 1958 Op. Att'y Gen. 159 (because officers and employees of statutory colleges are not state employees, they are entitled to participate in state health insurance program only to extent benefits are expressly conferred on them); 1928 Op. Att'y Gen. 215. In light of these factors, we believe agreements between state agencies and Cornell for academic services from the Statutory Colleges should be treated as contracts with non-state entities under the analysis of our 1980 Opinion.
Our conclusion is supported by the Court of Appeals' recent decision in Alderson. There, as noted, the Court held that documents relating to the research and academic activities of a Statutory College were not subject to FOIL, since those are matters controlled by Cornell, not the State. The agreements at issue here relate to the provision of academic services. The decision to provide those services is made by Cornell, not by a state officer or entity. Nor does the State control the content of any training program carried out pursuant to an agreement. The training programs are, in other words, "activit[ies] over which Cornell, as manager of the statutory colleges, exercises autonomy and control." Alderson, 4 N.Y.3d at 232.
While it is true that the Statutory Colleges expend state money in the course of carrying out the training programs, that fact alone does not make agreements providing for those services akin to interagency memoranda of understanding.[3] State money may be expended for all of the Statutory Colleges' academic activities, but the Court of Appeals nonetheless concluded in Alderson that, in view of Cornell's "broad authority" over academic matters, a Statutory College's academic activities are "a private function." 4 N.Y.3d at 232-33. Likewise, here we conclude that while state funds are expended to carry out the training programs, the programs are performed by the Statutory Colleges as part of their academic mission, an area over which Cornell exercises autonomy and control. Thus, the source of the funding for the Statutory Colleges' services is not dispositive of the question before us. Rather, the key here is the nature of the activities at issue. Accordingly, we believe that when a state agency enters an agreement with Cornell for the provision of such services, the agreement is best viewed as a contract between a state agency and non-state party.
For similar reasons, we reject the proposition that the agreements should be regarded as MOUs because of the special statutory relationship between Cornell, as administrator of the Statutory Colleges, and SUNY. The SUNY Trustees supervise the administration of the Statutory Colleges principally with respect to the colleges' finances. See Education Law § 355(4)(a) (SUNY Trustees authorized and empowered to review and coordinate Statutory Colleges' budget and appropriation requests). As noted, the agreements at issue here concern not the disbursement of public funds but rather the colleges' academic activities, a matter within Cornell's autonomy and control. "Neither the SUNY trustees nor any other state agency participate in decisions relating to [the Statutory Colleges'] prospective or ongoing research [and academic] pursuits." Alderson, 4 N.Y.3d at 232. Since the statutory scheme gives Cornell, a private entity, autonomy to determine the colleges' academic activities, agreements between Cornell and state agencies in respect of those activities are not in the nature of interagency MOUs.
CONCLUSION
For the foregoing reasons, we conclude that agreements between state agencies and Cornell to procure academic services by the Statutory Colleges are properly regarded by your office as contracts, not as interagency MOUs.
Very truly yours,
ELIOT SPITZER, Attorney General
[1] Our opinion issued today is limited to the question whether these agreements should be treated by your office as interagency agreements or as contracts between a state agency and non-state entity. We do not address the specific terms that agreements between Cornell and state agencies should contain or what form those agreements should take.
[2] For example, certain statutes grant employees of the Statutory Colleges benefits that are generally available to state and other public employees, including health insurance, see Civil Service Law § 161, participation in the deferred compensation plan, see State Finance Law § 5(8)(b), and membership in the state retirement system, see Retirement and Social Security Law § 40(b)(2)(a); Education Law § 390(3) (Optional Retirement Program). The Legislature has also expressly excluded the Statutory Colleges, or Cornell as their administrator, from the scope of certain statutory requirements, such as participation by minority group members and women in state contracts, see Executive Law § 310(11)(a)(iii), and the conflict of interest standards applicable to state officers and employees, see Public Officers Law § 73(1)(g).
[3] In your opinion request, you recognize the public nature of the funding of the Statutory Colleges. We likewise believe that the state funds supporting the Statutory Colleges' academic programs do not lose their public nature because these programs are administered by Cornell University. This conclusion flows from the fact that the Legislature has required that such funds be segregated and used exclusively for the Statutory Colleges, see Education Law §§ 5711(3), 5712(3), 5714(4), 5715(6)(c), and has "maintained the right to oversee Cornell's use of public funding in the management of the statutory colleges." Alderson,4 N.Y.2d at 233 ("To the extent that Cornell is accountable for the expenditure of public funds, it is performing a public function.").