In the Matter of the Application of JOSEPH JACOBS, Petitioner, for an Order of Prohibition against MEIER STEINBRINK, Justice of the Supreme Court of the State of New York, and Others, Respondents, in Connection with the Case of JOSEPH JACOBS, Plaintiff, v. METROPOLITAN GREENHOUSE MANUFACTURING CORPORATION and Others, Defendants.

Second Department, July 10, 1934.

198

*Jay Leo Rothschild,* for the motion.

*Henry Klein,* opposed.

HAGARTY, J. This is a motion for an alternative order of prohibition in the form annexed to the moving papers. The form of the order submitted is that Mr. Justice STEINBRINK and the defendants desist from further proceeding in the action in connection with which this application is made, on the ground that the said justice is not a properly constituted court and does not have jurisdiction of the subject-matter, and in any event is exercising or about to exercise a power not within his jurisdiction or that of the court which he purports to constitute.

The relief demanded in the action, among other things, according to the petition, is a receivership of the corporate defendants, a cancellation of an agreement theretofore executed by the plaintiff under which he released the defendants, and an accounting. The action is predicated upon the claimed fraud of the defendants and the diversion of the assets of the corporations by the defendants to their own use.

The action was commenced by the service of a summons and complaint on the 7th day of July, 1933, and issue was joined five days later. Concurrently with the service of process, a motion was made by the plaintiff for temporary relief, including, among other things, the appointment of a receiver, returnable on the 10th day of July, 1933, at a Special Term for motions, presided over by Mr. Justice STEINBRINK. On the argument the justice presiding suggested that in view of the possible delay in the trial he would be willing to make a " meritorious decision," which would dispose of the case. Thereupon an order was signed — in form a court order — which provided, among other things, " that the parties appear before the undersigned on September 11, 1933, at 10 A. M., at Chambers, in the County Courthouse, Borough of Brooklyn, City and State of New York (unless another date be fixed by stipulation between the attorneys) then and there to agree on a date for the trial and final disposition of the issues herein."

On the 23d day of August, 1933, this petitioner, as the plaintiff in the action, served a notice of trial for " a Special Term of the Supreme Court, appointed to be held in and for the County of

Kings at the County Courthouse in Brooklyn, New York City, on the 11th day of September, 1933, at 10 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard, pursuant to the order of Mr. Justice STEINBRINK," and a note of issue for the date so specified was filed with the county clerk on the 24th day of August, 1933, although Mr. Justice STEINBRINK had not been designated by this court to hold any such term. On the 26th day of September following a stipulation in the action was signed by the parties, not by the attorneys, which read: " An action having heretofore been begun by the plaintiff against the above named defendants for an accounting in connection with the matters and things set forth in the complaint herein, and a motion having subsequently been made for a receiver, which motion was by agreement of the parties disposed of by the court, and the parties to the above entitled action being desirous of avoiding a trial of the issues herein and of conciliating their differences in the matters and things in issue between them;

" It is stipulated and agreed by and between all of the parties hereto, that a formal trial of the issues herein presented be and the same hereby is waived, and the parties hereto agree to appear voluntarily and whenever required before Mr. Justice MEIER STEINBRINK, who was the justice hearing the motion for a receiver herein, and to submit to said justice, either by formal oral testimony or in such other manner as he may require such evidence as any of the parties care to submit, or as may be required by said justice, and at the conclusion thereof, the justice sitting as the court, shall make a ruling or decision on all of the matters and things in issue, which ruling or decision shall, if any one of the parties hereto desire, be embodied in a formal judgment to be signed by said justice and entered, and which said judgment shall be final, each of the parties hereto waiving any or all rights that he may have to appeal from said judgment."

Thereafter hearings were conducted by Mr. Justice STEINBRINK on the fifth and sixth days of October, at which time the petitioner says he submitted himself to questions " at the hands " of Mr. Justice STEINBRINK, as did his brothers, who are the individual defendants in the action. He says that thereafter there were no further hearings in connection with the charges of fraud against his brothers, involved in the action. He complains that after the 6th day of October, 1933, he was unable to procure a hearing of his charges by Mr. Justice STEINBRINK, that Mr. Justice STEINBRINK refused to see him, refused to take further proof, and refused to hear witnesses whose testimony he deemed essential to the proper presentation of his case. Defendants submit proof that

interviews were denied because of the refusal of the attorney of record for the defendants to participate in any such interview or to take part in any hearings, on the ground that that was the understanding at the time the stipulation was signed by the parties, that is, that the lawyers were to take no further part in the proceedings. Defendants' position here is that the matter was out of the hands of the lawyers and that from the signing of the stipulation they, the lawyers, had nothing more to do with the matter and that it was then exclusively in the hands of the justice. Although there was nothing in the stipulation to that effect, counsel for the defendants adhered to that policy, refused to accompany plaintiff's counsel to the justice, and the justice refused to receive plaintiff's counsel in the absence of defendants' legal representative. Mr. Justice STEINBRINK's version of that feature of the proceeding, as expressed in a communication to this court after these proceedings were instituted, is as follows: " I then [after the stipulation was signed] sent for all of the books and records of the companies that I required. I had before me the defendants Harry Jacobs and Maurice I. Jacobs and Henry W. Fried, and the plaintiff Joseph Jacobs. I took their statements stenographically; likewise, I took the statements of others for whom I sent. I had before me the reports of the company's accountant, as well as that of the plaintiff's accountant, and from time to time I had reports from the court's appointee on the Board of Directors. When I desired a balance sheet as of November 1, 1933, at a time when I believed the matter could be disposed of, I engaged an independent accountant. Shortly thereafter, I learned that the plaintiff's attorney had spoken to this accountant and when Mr. Nemerov called at my office to talk with me about the pending litigation, I declined to discuss it with him without the presence of Mr. Steuer. I telephoned to Mr. Steuer and told him that Mr. Nemerov was at my chambers and that he desired to speak with me. Mr. Steuer replied by saying that while he would not have done such a thing, he was agreeable that I should listen to what Mr. Nemerov had to say. It was in that conversation that I told Mr. Nemerov that, under the stipulation, he had no right to discuss this matter with the accountant designated by me, and that his action compelled me to discard the services of that accountant and necessitated the appointment of another accountant, to whom instructions would be given that under no circumstances was he to discuss the matter with any of the parties or their attorneys without first obtaining my approval.

" Thereupon, I sent for Mr. David B. Jacobs, head of a firm of certified public accountants, and as soon as I received his pre-

liminary report, I was ready to make my decision in the matter. I sent again for the parties and their attorneys. Before I announced my decision to them, I told them that I wished no embarrassment to either side or to myself, that I would absent myself from my chambers and that between them they should fix the compensation of the conservator appointed by the court. When informed that that was done, I returned to my chambers. Their decision and agreement, both with respect to the amount of payment and the manner of payment to Mr. Joseph Arons was disclosed to me, and thereupon and not until then did I announce my decision."

The learned justice evidently devoted much time to the solution of the problems involved in this case, and it well may be that he reached a just conclusion. However, that question is not before us. On the 9th day of February of this year, under the title of the action and as a justice of the Supreme Court, he handed down a memorandum, upon which, although the memorandum does not so state, a judgment is to be entered under the stipulation, and it is the entry of such judgment that is sought to be prohibited in this proceeding. While the justice recites the bringing of the action in his memorandum, the purpose of it is not stated. He does, however, narrate the incidents leading up to the stipulation, the contents of the stipulation; he recites that "the issues were submitted for final arbitrament," upon which "any order or judgment" might be entered without right to appeal, and then states his conclusion. Concededly, no witnesses were sworn, nor was any record made of the proceedings.

Briefly stated, the question now before this court is whether a justice of the Supreme Court, on a stipulation such as that here involved, may dispense with a legal trial and so assume the determination of the issues in the action in an informal manner that a binding and effective judgment may be entered over the protest of the plaintiff. We have here the possibility of the entry of a judgment by the Supreme Court in an action in which issue has been joined, where concededly the facts are in dispute, without the formality of a trial, without a decision resting on proof, without a record and over the protest and recorded objection of one of the parties. The justification advanced is the stipulation signed by the parties. The stipulation, however, conferred on the justice no jurisdiction which he did not have before it was signed. His powers are conferred on him by law and he is limited by it.

The source of jurisdiction of the Supreme Court of the State of New York is to be found in article VI, section 1, of the Constitution of the State of New York, which reads in part:

" Section 1. The Supreme Court is continued with general jurisdiction in law and equity, subject to such appellate jurisdiction of the Court of Appeals as now is or hereafter may be prescribed by law not inconsistent with this article."

Section 20 of article VI of the Constitution of the State of New York provides: " The testimony in equity cases shall be taken in like manner as in cases at law; and, except as herein otherwise provided, the Legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and in equity that it has heretofore exercised."

In *Farmers' Nat. Bank of Malone* v. *Houston* (44 Hun, 567) it was recognized that the distinction between actions at law and suits in equity was abolished, and in construing the last above quoted provision it was written: " The constitutional provision above cited may have two constructions. It may mean that, after its passage, testimony must be taken in the same manner in both classes of cases. Or it may further mean that the mode of taking testimony in both classes shall be that which had been previously used in courts of law. Taking it in connection with article 1, section 2, the latter is probably the meaning. For the production of witnesses before the jury has always been an important characteristic of that mode of trial."

The Judiciary Law, section 148, provides, among other things, that " A special term or a trial term of the supreme court must be held by one judge," and the Civil Practice Act, section 432, directs that " An issue of fact, triable by a jury or by the court, must be tried at a term held by one judge only." A further provision of the Civil Practice Act, section 442, is that " Upon a trial by the court of an issue of fact, its decision in writing must be filed in the clerk's office within sixty days after the final adjournment of the term where the issue was tried," and again, under rule 158 of the Rules of Civil Practice, " In the supreme court, an issue of fact triable by a jury must be tried at a trial term thereof, and an issue of fact triable by the court may be tried at a trial term or a special term of the supreme court." But the power to create the terms and to assign the justices of the Supreme Court to the various terms as created is conferred by section 2 of article 6 of the State Constitution, which, so far as it is relevant, reads: " The justices of the Appellate Division in each department shall have power to fix the times and places for holding special and trial terms of the Supreme Court held therein and to assign the justices in the departments to hold such terms; or to make rules therefor." (See, also, Judiciary Law, § 84.) The application of this provision of the Constitution was recognized in *Ford* v. *Clarke* (204

App. Div. 5), where it was written: "Upon the justices of the Appellate Division the power of allotment of the work has been conferred by the Constitution and it is their duty to exercise it according to their best judgment. They must determine the assignment of the trial justices to contested motions, to *ex parte* applications, to criminal trials, to equity, or to trials at law before court and jury, so as best to subserve the interest of the public in the dispatch and accuracy of legal judgments. Discretion in the exercise of this power is necessarily implied, and no other court or tribunal can substitute its judgment and discretion for theirs."

In *Smith* v. *State of New York* (214 N. Y. 140), which involved the right of a commissioner of the Board of Claims who did not become a member of that Board until the evidence upon the claim had been heard and the case submitted, to decide the case or take part in its decision, the court in denying the right and recognizing the fundamental right in a litigant to have his case heard and determined by the same justice in the Supreme Court, wrote: "The board is not in the strict sense a court (*People ex rel. Swift* v. *Luce*, 204 N. Y. 478), but its functions are judicial; and the requirement that witnesses shall be seen and heard by the judicial officer who is to weigh their testimony has been proved by experience to be a means so important for the ascertainment of truth as to entitle us to assume that it will not be lightly abandoned. The rules of the board evince no intent to depart from this established mode of trial, but on the contrary adopt the practice in the Supreme Court except as otherwise specially provided (Rule 1). Until a different rule has been promulgated, it is that practice which must be followed. (*Ostrander* v. *State*, 192 N. Y. 415, 419; *Spencer* v. *State*, 187 N. Y. 484.) The conclusion, therefore, is that those commissioners who heard the witnesses and those only, should have joined in the decision."

In *Matter of Richardson* (247 N. Y. 401), in which an order of prohibition was granted commanding a justice of the Supreme Court to desist from any further action as a justice of the Supreme Court in the investigation of the charges against an individual, it was held that there is no inherent power in Executive or Legislature to charge the judiciary with administrative functions except when reasonably incidental to the discharge of judicial duties, and the essence of the judicial function may not be destroyed by turning the power to decide into an opportunity to consult and recommend. Further, it was held that the justice might not assume the performance of such duties in his private or individual capacity. It was there written: "What he [the justice] learns is not committed to a record available to all the world. It is locked

within his breast to be withheld or disclosed as his discretion shall determine. No doubt he is to act impartially, neither presenting from malice nor concealing from favor. One might say the same of any prosecutor. The outstanding fact remains that his conclusion is to be announced upon a case developed by himself. Centuries of common-law tradition warn us with echoing impressiveness that this is not a judge's work. We should be sorry to weaken that tradition by any judgment of this court."

*Matter of Mitchel* v. *Cropsey* (177 App. Div. 663) involved a motion by the mayor of the city of New York for an alternative writ of prohibition directed to a justice of the Supreme Court commanding him to desist from further proceedings under an order made by him pursuant to section 1534 of the charter of the city of New York for the examination of the mayor and other city officials therein named. While the question there is not presented in this case, the general consideration of what is and what is not a judicial proceeding in that case is helpful and of interest here. It was written: " The end and object of all civil judicial proceedings is the enforcement or protection of a right, or the redress or prevention of a wrong. So the Supreme Court of the United States in *Gordon* v. *United States* (117 U. S. 697) refused to entertain an appeal from the Court of Claims because that court did not pronounce an enforcible judgment, but its decisions were practically advisory only.

" But the fact that proceedings have such end and object does not alone make them judicial. This end, which we may for convenience call a judgment, must be reached in a judicial manner. There must be parties, and opportunity to be heard, and the tribunal must proceed either to a determination of facts upon evidence or of law upon proved or conceded facts. When both these elements are present there is a judicial proceeding."

Jurisdiction is conferred upon the Supreme Court to enter judgment (1) in an action at law or in equity after trial of the issues or on application for summary judgment; (2) on an order based on an award in a controversy submitted to arbitration pursuant to statutory provisions; (3) on a submission to the court for judgment on an agreed statement of facts, and (4) on consent, either in open court or by stipulation. It is claimed here, but without merit, that the proceeding before Mr. Justice STEINBRINK may be deemed to be in the nature of an arbitration proceeding and as such sustained under the stipulation. Arbitration proceedings in which an order may be entered sustaining a judgment are statutory, and it may not seriously be argued that compliance with the provisions of the statute was had or attempted by the stipulation. (See

Civ. Prac. Act, §§ 1448–1469.) Concededly there was not a submission on an agreed statement of facts. The question of whether the plaintiff by the stipulation may be deemed to consent to the entry of judgment remains. Consent to the entry of judgment implies that the terms and conditions have been agreed upon and consent thereto given in open court or by stipulation filed. Such consent is given after the determination or adjustment by agreement of the issues involved in the controversy. Consent previously given may be assumed to continue after such determination by failure to withdraw or to protest, and that involves a process of settlement or adjustment of litigation which has recently assumed recognition as " conciliation." The entry of judgment as the result of " conciliation " rests on consent alone, and that consent obtains at the time of the entry of the judgment. It may be withdrawn at any time prior to the entry of judgment, and it has been withdrawn in this case.

The pleadings here, we must assume, presented the issues in proper form to the court, and the plaintiff now insists that they be determined in a judicial proceeding, since he does not consent to the entry of judgment. The Constitution and the Legislature having provided the power in the court to dispose of those issues and the methods by which disposition of them should be made, culminating eventually in the entry of a judgment of the Supreme Court, it must be assumed that the proper administration of justice requires that the power so invested be exercised only as conferred and within the mandates of law. When, therefore, issues are thus presented for disposition, the court is without power or authority to dispose of them in any other manner or by any other means than those designated, which of necessity require the taking of proof involving the making of a record in support of the ultimate disposition at a properly constituted term of the Supreme Court — in brief, a trial of the case.

The motion should be granted.

SCUDDER and TOMPKINS, JJ., concur; LAZANSKY, P. J., concurs in result, with the following memorandum: Parties may waive the usual formalities of practice and procedure; they may forego the right to appeal; having appeared by counsel, they may surrender that privilege and continue the litigation in person; but they may not without consent be deprived, as here they have been, of the right to be heard by counsel. (N. Y. State Const. art. I, § 6; *People ex rel. Garling* v. *Van Allen*, 55 N. Y. 31; *Chandler* v. *Avery*, 47 Hun, 9.) KAPPER, J., dissents and votes to deny the motion.

Motion granted.