In the Matter of the Application of the NEW YORK STATE LABOR RELATIONS BOARD, Petitioner, for an Order against THE NEVINS, INC., Respondent.

Supreme Court, Special Term, Kings County, June 21, 1940.

*Daniel Kornblum*, for the petitioner.

*Milton M. Eisenberg*, for the respondent.

NOVA, J. The State Labor Relations Board moves herein for an order confirming its determination of January 31, 1940, pursuant to which the respondent was directed to reinstate certain of its employees under prescribed conditions. The decision is predicated upon a finding that respondent has been guilty of unfair labor practices in that it has violated subdivision 6 of section 704 of article 20 of the Labor Law. That subdivision declares that an employer who refuses to bargain collectively with the representatives of the employees thereby commits an unfair labor practice.

The respondent conducts a restaurant business at 8 Nevins street in the borough of Brooklyn. The above-mentioned employees formerly were waiters in the establishment and are members of a labor organization known as Waiters & Waitresses Union, Local No. 2 of Brooklyn and Queens. The respondent and the union entered into a collective bargaining agreement during January, 1937. Respondent alleges that under the terms of the contract it was provided that the parties were to be governed thereby until December 31, 1937, and that during such period there should be no strike or lock-out. Toward the end of July, 1937, upon two consecutive occasions, a dispute arose between respondent and representatives of the union concerning the particular selection of a substitute to perform temporarily the work done by one of the regular waiters who had failed to report for duty allegedly because of sickness. Some bitterness was engendered as a result of the failure to adjust the difficulty satisfactorily. On July thirty-first all the waiters, except those who were relatives of respondent's president, went on strike and picketing of the premises ensued. In the written memorandum which accompanies the Board's determination of the matter, it is very significantly stated that subsequent thereto, and on August fifth and sixth, the parties " attempted to compose

their differences." The Board has found as a fact that "there is no evidence that the respondent at these conferences refused to bargain collectively with the representative of the employees." Thus "conferences were held at which the union claims that it offered (1) to terminate the strike; (2) to submit the whole situation to arbitration; and (3) to deal lightly with the three men (relatives of respondent's president) who had not gone out on strike on July 31, 1937, by levying a small fine. Respondent claims that the union offered to have all its men go back to work, but refused to permit the three relatives to do so."

Attempts at amicable adjustment having failed, respondent instituted an equitable action in the Supreme Court of Kings county upon the ground that it had performed all the terms and conditions of the contract of January, 1937, and that the strike of July thirty-first had been called without just cause and in violation of the provisions of the said agreement which proscribed the calling of a strike until December 31, 1937. The complaint further indicated that respondent had no adequate remedy at law. Among other items of relief which were therein sought, it was demanded that the court direct the union specifically to perform the provisions of the agreement. On August ninth respondent applied at Special Term of this court for an injunction *pendente lite*, such application being predicated on the summons and complaint and a verified bill of particulars in accordance with statutory requirements. The motion came on for determination before Mr. Justice McCOOEY on August 12, 1937. In view of the findings of the Board, a subject to which I shall revert, this date is to be given a consideration of much significance.

The written memorandum of the Board points out that upon the return day of the then pending motion — August twelfth —" the parties met in the Justice's Chambers pursuant to arrangements made by the Union's attorney who had suggested that Justice McCOOEY ' use his good offices and give us of his time so that, if possible, we could reach an amicable settlement of the differences between Mr. Sartori [the respondent's president] and the Union.' " The Board has found, however, that upon the occasion in question the respondent, through its president, declared that " he didn't want to make any settlement with the Union."

It appears that subsequently " the parties met frequently *in the course of the above mentioned action.*" One of these occasions occurred during the week of August seventeenth, when the attorneys for the parties met in the justice's chambers again upon a motion to punish members of the union for contempt. Again it is said that respondent declined to submit the pending difference to

mediation or arbitration. A further offer to similar effect is said to have been made late in August or early in September, when the attorneys for the parties met in the Appellate Division of this Department " on their way to attend a conference before Mr. Justice HAGARTY, and discussed the situation." Upon a further occasion it is said that the union's attorney offered to have the latter justice act in the matter but that Sartori replied that he " would not consider even discussing arbitration or settlement." Finally, early in September, 1937, upon a motion before Mr. Justice BROWER at Special Term, whereat the union attempted unsuccessfully to procure a dismissal of the above-mentioned complaint (see affirmance of the order denying the dismissal in *Nevins, Inc.*, v. *Kasmarh*, 279 N. Y. 323), it is said that the union's attorney sought unavailingly to procure Sartori's consent to a settlement of the matter.

Upon the hearing before the Board respondent denied categorically that, upon the occasions in question, it had rejected the offers to bargain with the union. On the contrary, it insisted that it had desired a discussion which would consummate in a possible peaceful solution but that its offers had been refused by the union. Upon the issue which was thus raised, the Board has found in favor of the union. Suffice it to say, with respect thereto, that this court is without power to disturb the finding. (Labor Law, § 707, subd. 2; *Matter of Metropolitan Life Ins. Co.* v. *Labor Relations Board*, 280 N. Y. 194, 209.)

Substantially upon the basis of the foregoing facts, the Board's decision reads: " We find that on and after August 12, 1937, the respondent refused to bargain collectively with the union as required by the Act, a refusal which was actively expressed by respondent for over a month after August 12. * * * The existence of a strike neither terminated respondent's obligation to bargain collectively with the designated representative of its employees, nor excused or justified such refusal to bargain. On the contrary, the existence of a strike intensified that duty since such bargaining provides the best avenue for restoring peaceful industrial relations. That respondent bargained with the union on August 5 and 6, 1937, the first two conferences on the strike situation, does not condone its refusal to do so since August 12th. This is not a case where a genuine impasse resulted after negotiations had been conducted in good faith and no compromise could be reached. * * * We find that respondent's refusal to bargain directly prolonged the strike of respondent's employees. The strike was declared on July 31st. Until August 12th it was a voluntary act on the part of said employees. However, the men have been out of work since. Responsibility for their remaining out of work after August 12,

1937, must be laid to respondent's refusal to bargain on and after that date. The many proposals and procedures submitted by the union on and after August 12, 1937, looking toward an adjustment of the situation, and the refusal of the respondent to consider any of them or to make any suggestions of its own in this direction indicate that the union wished to end the strike but that respondent, for some reasons of its own, refused to cooperate. The facts herein lead us to conclude that the onus for having prolonged the strike and kept the men out of work is directly attributable to respondent's refusal to bargain on and after August 12, 1937."

In spite of the foregoing conclusion it is significant to note that finding numbered " 21 " reads as follows: " At no time since July 31, 1937, to date, has the Union made any unconditional request of the respondent that the respondent's employees, who left the establishment on July 31, 1937, be permitted to go back to work."

It seems to me that the facts as found by the Bor 1 do not establish a legal basis upon which to conclude that on and after August 12, 1937, the respondent violated subdivision 6 of section 704 of the Labor Law. Here an employer claimed to have a contract with its employees pursuant to which it was stated that, during the lifetime thereof, there were to be no strikes. In alleged violation of such agreement, a strike did in fact occur. After efforts to procure a peaceful settlement of the dispute had proved abortive, the employer sought to procure in a court of plenary equitable jurisdiction the specific enforcement of an obligation which the union had incurred under its agreement but which it had subsequently failed to discharge by calling a strike and picketing the premises. Having invoked the aid of the court for a determination and enforcement of its rights under the contract, can it be said that the employer engaged in an unfair labor practice because it did not thereafter desist, upon the demand of the union representatives, and thereupon accede to their desire that the matter be adjusted through mediation, arbitration or some similar medium? Pursuant to the contract mutual obligations were created which were binding upon the parties thereto. Each party must have known the obligation which it had respectively assumed thereunder and the consequences of failure or refusal to perform its contractual requirements. Upon the breach of such obligation by the union, the right of a court of equity to issue an injunction to prevent the contractual violation is established. (See *Goldman* v. *Cohen*, 222 App. Div. 631.) Thus in commenting upon the instant respondent's endeavor to secure equitable redress the Court of Appeals stated that it had " *rightfully invoked the jurisdiction of equity.*" (See *Nevins, Inc.*, v. *Kasmach, supra*, p. 323.)

Subsequent to the institution of its action, the refusal by the respondent to discuss an adjustment of the matter amounted to nothing more or less than an insistence that the issues which had been or might be created by the pleadings be determined judicially by the established principles of equity. Even if true, as apparently found by the Board, that the respondent refused to permit the above-named justices to act as mediators or arbitrators for the purpose of effectuating a possible settlement of the matter, such refusal was amply justified in accordance with the decision rendered in *Matter of Jacobs* v. *Steinbrink* (242 App. Div. 197). In that case Mr. Justice STEINBRINK, upon the consent which was initially given by both of the parties, proceeded to act as arbitrator in the matter. Said the court (at p. 205) in holding such procedure not legally cognizable, that " The pleadings here, we must assume, presented the issues in proper form to the court, and the plaintiff now insists that they be determined in a judicial proceeding, since he does not consent to the entry of judgment. The Constitution and the Legislature having provided the power in the court to dispose of those issues and the methods by which disposition of them should be made, culminating eventually in the entry of a judgment of the Supreme Court, it must be assumed that the proper administration of justice requires that the power so invested be exercised only as conferred and within the mandates of law. When, therefore, issues are thus presented for disposition, the court is without power or authority to dispose of them in any other manner or by any other means than those designated, which of necessity require the taking of proof involving the making of a record in support of the ultimate disposition at a properly constituted term of the Supreme Court — in brief, a trial of the case."

I thus hold that even though the respondent failed to accede to a settlement of the dispute, after the institution of the action in the Supreme Court, such fact did not constitute a basis upon which to predicate a finding that on and after August 12, 1937, it engaged in an unfair labor practice within the meaning of the statute. On the contrary, I conclude, as a matter of law, that it was not an unconscionable practice nor unjustly inimical to the interests of labor that the respondent, aggrieved at the time because of an alleged deliberate violation of its contractual rights, sought to have a court of equity issue any necessary mandate in restraint of such breach. Having appealed to the court for such purpose, there was no obligation on respondent's part that it submit compulsorily to an extra-jural settlement of the issue. An obligation of such character, under our scheme of jurisprudence, certainly is not imposed upon any other member of the body politic and con-

sequently it cannot be fairly assumed that the Legislature in enacting subdivision 6 of section 704, thereby intended to preclude an employer from insisting upon a final and full determination by the court itself of an issue properly pending therein. To sustain an argument to the contrary would effectuate *pro tanto* a divestiture of the prerogatives with which a court of plenary equitable jurisdiction is inherently endowed and which affords protection indiscriminately to all classes of persons, including an aggrieved employer. The necessity that a court of equity extend its protection to an individual within the latter category is all the more apparent due to the extreme unilateral nature of article 20 of the Labor Law as it presently reads. Pursuant to the provisions thereof employers only — not employees — are amenable to the possible charge of having committed " unfair labor practices." No act on the part of employees, in violation of the rights of the employer, may be made the proper subject for redress by the statutory board. There is no mutuality in the present legislative definition of " unfair labor practices " and in the prescription of available remedies. Some rectification of a similar lack of mutuality, which is likewise found in the National Labor Relations Act, is being proposed by the present Congress, a rectification which is apparently welcomed by editorial comment in some of the leading periodicals. Typical comment upon the subject is found in the editorial of the New York *Times* dated June 11, 1940.

On August 15, 1937, the respondent replaced the striking waiters by other employees. Three waiters, who had refused to join the strike, nine bus boys and others were promoted to or given positions as waiters. With respect thereto the Board states in its decision: " Since, as we have found, the strikers remained out of work on and after August 12, 1937, *due to respondent's unfair labor practices* (italics mine), and since their jobs were not filled until *after* the commission by the respondent of said unfair labor practice, the respondent is under a duty, in order to effectuate the policies of the act, to reinstate said strikers, and if necessary to accomplish that purpose, to discharge replacements."

As pointed out heretofore, however, I have concluded, as a matter of law, that the respondent did not violate the statutory prohibition set forth in subdivision 6 of section 704 of the Labor Law on or after August 12, 1937. After its employees refused to continue their work by calling a strike, the respondent was entitled to afford its business full protection by continuing its operation through the medium of replacements. The propriety of its action in so doing is sanctioned by the authority of the United States Supreme Court in *National Labor Relations Board* v. *Mackay Radio & Telegraph Co.*

(304 U. S. 333), wherein it is stated (at p. 345): " Nor was it an unfair labor practice to replace the striking employees with others in an effort to carry on the business. Although section 13 [of the act there construed] provides, ' Nothing in this Act shall be construed so as to interfere with or impede or diminish in any way the right to strike,' it does not follow that an employer, guilty of no act denounced by the statute, has lost the right to protect and continue his business by supplying places left vacant by strikers. And he is not bound to discharge those hired to fill the places of strikers, upon the election of the latter to resume their employment in order to create places for them. The assurance by respondent to those who accepted employment during the strike that if they so desired their places might be permanent was not an unfair labor practice nor was it such to reinstate only so many of the strikers as there were vacant places to be filled."

There is, therefore, no obligation on respondent's part to effectuate a reinstatement as ordered by the Board.

The motion to confirm the order is denied and respondent's cross-motion, which seeks to nullify the Board's determination, is granted.